IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | CRIMINAL NO. 9:23-396-RMG |
| ) | |
| **vs.** ) | |
| ) | |
| ) | |
| ) | |
| **RICHARD ALEXANDER MURDAUGH** ) | |
| ) | |

### Government's Response to Defendant's Motion for Immediate Seizure of Defendant's Assets

The Defendant Richard Alexander Murdaugh ("Murdaugh") moves this Court for an order directing the U.S. Marshal's Service or other appropriate federal officers to immediately seize all assets currently subject to a state court Receivership. Dkt. 43. Although a preliminary order of forfeiture gives the Attorney General (or a designee) the *authority* to seize specific property subject to forfeiture, Fed. R. Cr. P. 32.2, the United States does not intend to seize the assets in the state court Receivership at this time. Even if the United States were inclined to do so, neither the United States nor this Court can or should exercise jurisdiction over those assets because a state court currently has jurisdiction over them. Therefore, the Court should deny the Defendant's motion.

### I.     Background

On November 2, 2021, a South Carolina circuit court judge granted a Motion for Temporary Injunction and Appointment of Co-Receivers over Murdaugh's assets.[1] *See* Exhibit 2.

---

[1]     The order defined "Alex Murdaugh Assets" as "all assets, future interests, beneficial interests, inherited assets, assets transferred, real property, securities, stocks, promissory notes, mortgages, partnership interests, interest in all limited liability companies and similar types of entities, options, bonds, rents leases, annuities, contract rights, creditor rights, easements, chattel, livestock, mineral rights, all useful things, liabilities capable of being re-characterized as assets, intellectual property, all rights to name, image or likeness, all publication rights to the events related in any way to Alex Murdaugh and contract rights and all other things, rights and interests

The ruling was followed by a formal order, issued November 4, 2021. *See* Exhibit 3. The order temporarily enjoined Murdaugh from "hiding, concealing, misappropriating, selling, encumbering, transferring, impairing the value of and otherwise disposing of any" assets.[2] *Id.* The order further appointed John T. Lay and Peter M. McCoy as Co-Receivers pursuant to South Carolina Code § 15-65-10, the court's equitable powers, and general principles of fraud and deceit under South Carolina law. *Id.*

Pursuant to the order, the Co-Receivers were granted the exclusive power and authority: "(i) to investigate, identify and attempt to locate all of the Subject Assets; (ii) to collect, marshal and administer all of the Subject Assets; (iii) to accept service on behalf of Alex Murdaugh and/or Buster Murdaugh with respect to Alex Murdaugh Assets and/or Buster Murdaugh Assets, as the case may be; (iv) to engage counsel on behalf of Alex Murdaugh and/or Buster Murdaugh as it relates to Alex Murdaugh Assets and/or Buster Murdaugh Assets, as the case may be; and (v) to take any and all steps necessary to identify, recover, protect, collect, preserve, receive, manage, liquidate, sell, administer and marshal, and to do all things incidental, necessary and/or appropriate thereto, all of the Subject Assets during the pendency and final resolution of this lawsuit."[3] *Id.*

---

without limitation that may be monetized for value, whether known or unknown, whether it is presently owned, held, or controlled or was previously owned, held or controlled or will be owned, held or controlled in the future, whether actual or contingent, whether owned, held or controlled directly or indirectly and/or whether owned, held or controlled in whole or in part" by Murdaugh. Exhibit 3. The order further included any and all assets transferred, concealed, hidden, sold, encumbered, or otherwise disposed of which previously were owned, held or controlled by Alex Murdaugh, directly or indirectly and in whole or in part. *Id.*

[2]     The order also applied to Buster Murdaugh's assets, as defined in the order. Exhibit 3. However, Buster Murdaugh's assets are not at issue in the matter presently before the Court. Therefore, the government will only address the Co-Receiver's authority with respect to Murdaugh's assets.

[3]     The attached affidavit of Co-Receivers John T. Lay and Peter M. McCoy more fully sets forth the underlying facts surrounding the state court's establishment of the Receivership with

Since their appointment, the Co-Receivers have made extensive efforts to locate, secure, and marshal an estimated $2,428,981.29 in liquidated and unliquidated assets, as fully detailed in the attached affidavit and accounting. *See* Exhibits 4 & 8. According to the Co-Receivers, among many other actions, the Co-Receivers have: (i) issued more than 75 subpoenas to banks, insurance companies, law firms, businesses, and Murdaugh's professional and business associates; (ii) searched and monitored public records; (iii) sold real and personal property; (iv) negotiated agreements to settle claims with Murdaugh's creditors; (v) litigated numerous civil complaints on Murdaugh's behalf; and (vi) deposed witnesses. Exhibit 8.

The current cash balance in the state court Receivership is $1,500,783.89, and with the anticipated disposition of remaining assets, the Co-Receivers expect that an additional $269,000.00 (less applicable brokerage fees and other expenses) will be placed in the fund. *See* Exhibits 4 & 8.

On August 3, 2022, the Co-Receivers filed a Motion for Entry of Scheduling Order for the Allocation of Receivership Funds in Final Resolution of Eligible Claims and Judgments Against R. Alexander Murdaugh, Sr. and for the Appointment of a Special Referee to Administer the Claims Process with the Receivership Court. Following a public hearing on August 25, 2023—and without objection from Murdaugh, his counsel, or any of his creditors or claimants—the Receivership Court entered an Order on September 19, 2023, setting forth the process for the Receivership's funds to be equitably allocated amongst Murdaugh's many eligible creditors and claimants. Exhibit 7. The Receivership Court appointed L. Walter Tollison, III as special referee to implement and administer the process and schedule ordered by the court. *Id.* Pursuant to the

---

respect to Murdaugh's assets and the steps taken by the Co-Receivers since their appointment. Exhibit 8.

order entered on September 19, 2023, all persons having claims against Murdaugh must file a proof of claim by October 29, 2023, to be eligible for any allocation of Receivership funds. *Id.*

On September 21, 2023, Murdaugh pleaded guilty to 22 counts of federal financial crimes, including wire fraud, bank fraud, and money laundering. The indictment included a forfeiture allegation, subjecting Murdaugh to forfeiture of cash proceeds or equivalent substitute assets. Dkt. 2. Murdaugh agreed to voluntarily surrender and not contest the forfeiture of any and all assets and property subject to forfeiture, including a minimum of approximately $9,000,000 in United States Currency. Dkt. 37.

On September 22, 2023, this Court entered a preliminary order of forfeiture, setting forth that all property, real or personal, which constitutes, is traceable to, or is derived from proceeds traceable to Murdaugh's crimes, are subject to forfeiture. Dkt. 42. The Court ordered that the United States is entitled to seize substitute assets equal to the value of the proceeds Murdaugh obtained as a result of his crimes. *Id.* The Court ordered forfeiture against Murdaugh and in favor of the United States for $9,000,000 in United States currency, and further set forth that the United States may move to amend the order to substitute property to satisfy the forfeiture judgment and may seize any substitute assets to satisfy the forfeiture judgment. *Id.*

Murdaugh now files a Motion for Immediate Seizure of Defendant's Assets, requesting that this Court direct the U.S. Marshals "or other appropriate federal officers" to immediately seize all assets held by the Co-Receivers. Dkt. 43.[4] While the Government does intend to seek a forfeiture money judgment totaling more than $10,000,000 at or before Murdaugh's sentencing,

---

[4] Of note, as part of the settlement of a claim for fraudulent conveyance against Murdaugh's deceased wife's estate, Murdaugh knowingly and voluntarily, under the advice of his current counsel, waived any objection or appeal of the Receivership Order on March 22, 2023. *See* Exhibit 6. Yet he now seemingly contests the established by that Order.

4

the Government does not intend to seize the assets currently held in the state court Receivership at this time. And even if it were inclined to do so, neither the United States nor this Court can exercise jurisdiction over assets currently under the jurisdiction of the state court. Therefore, the Court should deny the Defendant's motion.

## II.     The Government Does Not Intend to Seize State Court Receivership Assets at this Time.

Pursuant to Federal Rule of Criminal Procedure 32.2(b)(3), the entry of a preliminary order of forfeiture *authorizes the Attorney General (or a designee)* to seize the specific property subject to forfeiture. As fully set forth in this Court's preliminary order of forfeiture, the United States is authorized to seize $9,000,000 in United States currency or substitute assets to satisfy its forfeiture money judgment. Dkt. 42. But the United States is not *required* to seize any assets—it is entirely within the Government's discretion as to whether it seizes assets subject to forfeiture. Murdaugh cannot force the Government to seize any assets, particularly assets over which he has either relinquished or been divested of control.

The Government does not intend to seize the assets currently held in the state court Receivership at this time. The Receivership was established nearly two years ago. Since then, as fully set forth in the attached Affidavit, Exhibit 8, the Co-Receivers have engaged in extensive efforts to ascertain and seize Murdaugh's assets. The Co-Receivers have engaged in complex litigation over legal issues surrounding the seizure of those assets, and their efforts have substantially increased the value of the Receivership fund. The United States defers to the process established by the state court and undertaken by the Co-Receivers. The United States has no intention of interfering with that process at this stage in the proceedings.

The Defendant claims that the United States would "perform the same function [as the Co-Receivers] in ancillary proceedings for free." Dkt. 43 at 2. But the United States would *not* perform

the same function in ancillary proceedings contemplated under Rule 32.2. Some of the victims of Murdaugh's federal crimes are potential claimants to the assets currently held by the Co-Receivers, including the beneficiaries of the Estate of Gloria Satterfield, Pamela Pinckney, Natasha Thomas, Palmetto State Bank, and Peters Murdaugh Parker Eltzroth & Detrick. But some of these victims have been made "whole" for purposes of federal restitution and would therefore not be entitled to any additional funds in ancillary forfeiture proceedings.

And, importantly, anticipated claimants to the assets in the state court Receivership include individuals that would not be entitled to restitution as victims of Murdaugh's federal crimes, including victims of the 2019 boating accident and Murdaugh's individual creditors.[5] Therefore, if the United States were to seize the assets in the state court Receivership, many of the current claimants may not be able to recover funds through the ancillary proceedings contemplated under Rule 32.2. Contrary to Murdaugh's claims, ancillary proceedings would not supplant the process established by the Receivership. The Government has independently notified all the victims of Murdaugh's federal crimes of the state court Receivership's claims process and is satisfied that they will have an opportunity to file claims should they wish to do so.

Murdaugh claims that the assets in the Receivership will be unnecessarily dissipated in the claims process through the continued collection of fees from private attorneys. To date, the Co-Receivers and their counsel have collected $641,442.14 in fees, representing a substantial discount relative to standard hourly fees for the same work. Exhibit 8. These fees were approved by the state court circuit judge, absent objection from Murdaugh or any potential claimants or creditors. *Id.* The Co-Receivers represented to the state court that they do not anticipate requesting or

---

[5] Murdaugh's attorneys, Jim Griffin and Dick Harpootlian, are also anticipated claimants of the assets in the Receivership, seeking money owed to them for attorney's fees.

receiving any additional payment of fees from the Receivership for their remaining work. *Id.* Moreover, the appointed Special Referee represents that he anticipates collecting between $50,000 and $75,000. Exhibit 9. Any risk of future dissipation of the Receivership assets in relatively minimal and does not warrant the United States' intrusion into the established and ongoing process.

The United States has the discretion to seize assets subject to forfeiture following the entry of a preliminary order of forfeiture.[6] Here, the United States has elected not to seize the assets in the state court's Receivership. Therefore, Murdaugh's motion should be denied.

### III.     The United States Cannot Exercise Jurisdiction over Assets Currently Under State Court Jurisdiction.

Even if the government were inclined to seize the assets in the state court Receivership, neither the Attorney General nor this Court can exercise jurisdiction over the assets. Federal courts have jurisdiction over "any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress." 28 U.S.C. § 1355(a). But important here, a "state court and a federal court cannot simultaneously exercise *in rem* jurisdiction over the same property." *United States v. $270,000.00 in U.S. Currency, Plus Interest*, 1 F.3d 1146, 1147 (11th Cir. 1993) (per curiam); *see also* Stefan D. Cassella, Asset Forfeiture Law in the United States § 7–8, at 274 (2d ed. 2013) ("[O]nly one court may exercise jurisdiction over property at a time, and the first court to obtain jurisdiction maintains it until it is relinquished."). Instead, "the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other." *Id.* at 1148 (quotation marks omitted); *see also Key v. Wise*, 629 F.2d 1049, 1059 (5th Cir. 1980) ("The assumption of jurisdiction over an action *in rem* establishes a bar to any other action *in rem* or *quasi in rem* respecting the same

---

[6] The United States regularly elects not to seize certain assets to satisfy a forfeiture money judgment, for countless reasons. *See, e.g.*, JM 9-111.120, 9-111.123, 9-111.124, 9-111.400.

property until the first court's jurisdiction is properly terminated."). Such a rule is intended "[t]o avoid unseemly and disastrous conflicts in the administration of our dual judicial system, and to protect the judicial processes of the court first assuming jurisdiction . . . ." *Penn General Casualty Co. v. Commonwealth*, 294 U.S. 189, 195 (1935) (citations omitted). The important consideration is "[t]he logical and practical difficulty of two courts simultaneously vying for possession or control of the same property . . . ." *United States v. $79,123.49 in United States Cash and Currency*, 830 F.2d 94, 97 (7th Cir. 1987).[7]

When a Receiver is appointed by a state court, that court is considered to have jurisdiction over the assets in the Receivership. The South Carolina Supreme Court has long established that "property in the hands of the receiver is *in custodia legis*; the possession of the property by the receiver is the possession of the court which appointed him." *Bates v. S.C. Nat. Bank*, 280 S.C. 599, 601, 313 S.E.2d 361, 362 (Ct. App. 1984) (citing *Peurifoy v. Gamble*, 145 S.C. 1, 142 S.E. 788 (1928)). "A receiver is an officer of the court through whom the court takes possession of the assets of the [subject person], for the purpose of preventing their waste or destruction and of reducing them to such form as may be necessary for their ratable distribution among those who may be entitled thereto . . . He is the medium through which the court acts in execution of its orders

---

[7] The Government recognizes that the cases cited above and related cases generally address circumstances in which federal authorities seek to seize assets in civil *in rem* forfeiture proceedings that have already been subject to state forfeiture proceedings. Here, a forfeiture action against Murdaugh is technically considered an *in personam* criminal forfeiture proceeding against Murdaugh. But when the federal government seeks to enforce a criminal forfeiture money judgment by seizing a defendant's asset, the action is one against the asset itself, not the individual. Thus, the same or similar considerations and legal implications apply with equal force here—if the United States were to seize the assets in the state court Receivership, the result would be two courts simultaneously vying for possession and control of the same property. This is exactly the scenario contemplated by the principle prohibiting one court from exercising jurisdiction over assets already under the jurisdiction of another court.

and decrees." *Peurifoy*, 145 S.C. 1. Property that is *in custodia legis* is "subject at all times to the orders of the appointing court." *Stone v. Mincey*, 180 S.C. 317, 185 S.E. 2d 619, 621 (1936).

Here, the state court has jurisdiction over the assets in the Receivership. And the state court has no intention of relinquishing jurisdiction over these assets. Therefore, the United States and the federal government do not have the right to exercise jurisdiction over these assets.

### IV.     Conclusion

The United States does not intend to seek the seizure of the assets in the state court Receivership at this time. Moreover, the state court has exercised jurisdiction over the assets. As such, neither the Attorney General nor this Court can or should exercise jurisdiction over those same assets. Therefore, Murdaugh's motion should be denied.

Respectfully submitted,

ADAIR F. BOROUGHS
UNITED STATES ATTORNEY
By: s/ *Emily Evans Limehouse*
Emily Evans Limehouse (Federal ID #12300)
Assistant United States Attorney
151 Meeting Street, Suite 200
Charleston, South Carolina, 29402
(843) 266-1663
Emily.Limehouse@usdoj.gov

October 4, 2023