# EXHIBIT 4

| Assets Liquidated | | |
|---|---|---|
| Amount | Description | |
| $359,921.87 | Alex Murdaugh portion of Edisto Beach House Proceeds | |
| $521,549.60 | Berkeley County Property Proceeds | |
| $101,996.37 | Williams Island Sale | |
| $424,941.34 | Alex Murdaugh 401K Liquidation<br><br>*See Exhibit A Reference Documents:*<br>*(1) Murdaugh Motion to Set Aside Injunction*<br>*(2) Consent Response* | |
| $443,173.89 | Moselle Interest and Late Fees per Settlement Agreement with PSB<br><br>*See Exhibit B Reference Documents:*<br>*(1) Settlement Agreement* | |
| $275,000.00 | Fraudulent Conveyance Settlement with Estate of Maggie Murdaugh<br><br>*See Exhibit C Reference Documents:*<br>*(1) Fraudulent Conveyance Complaint*<br>*(2) Settlement Agreement* | |
| $26,313.00 | One-Sixth Interest in Timber Sale | |
| $3,000.00 | Sale of 1993 International Dump Truck | |
| $4,085.22 | Sale of other Personal Property | |
| | | |
| $2,159,981.29 | LIQUIDATED ASSET SUBTOTAL | |

| Expenses Paid | | |
|---|---|---|
| $6,757.19 | Reimbursement of out of pocket expenses incurred by Gallivan White & Boyd | |
| $264,899.70 | Attorney and Receiver Fees | |
| $136,496.69 | Attorney and Receiver Fees | |
| $10,998.42 | Reimbursement of out of pocket expenses incurred by Gallivan White & Boyd | |
| $240,045.75 | Attorney and Receiver Fees | |
| $659,197.75 | EXPENSE SUBTOTAL | |

| $1,500,783.54 | SUBTOTAL Liquidated Assets less Expenses and Fees |
|---|---|

| Assets Outstanding | | |
|---|---|---|
| List Price | Alex Portion | Description |
| $14,000.00 | $14,000.00 | Scout Boat, Yamaha Motor, Trailer (to be listed with Webster's Marine) |
| $35,000.00 | $17,500.00 | Islands R038-0003, 0004, and 0005 |
| $20,000.00 | $10,000.00 | Island R038-0006 |
| $10,000.00 | $5,000.00 | Island R038-0007 |
| $225,000.00 | $112,500.00 | (0 Station Creek Island) R300 025 0017 0000 |
| $150,000.00 | $75,000.00 | (TBD Island C) R300 025 000 0018 |
| $35,000.00 | $35,000.00 | Timber Property |
| TOTAL | $269,000.00 | |

| $1,769,783.54 | Potential Final Balance |
|---|---|

ELECTRONICALLY FILED - 2022 Oct 13 9:49 AM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br>COUNTY OF HAMPTON | IN THE COURT OF COMMON PLEAS<br>FOURTEENTH JUDICIAL CIRCUIT |
| Renee S. Beach, as Personal Representative<br>of the Estate of Mallory Beach,<br><br>                              Plaintiff,<br><br>v.<br><br>Gregory M. Parker, Inc. a/k/a Parker's<br>Corporation d/b/a Parkers 55, Richard<br>Alexander Murdaugh, Richard Alexander<br>Murdaugh, Jr.; John Marvin Murdaugh, as<br>PR of the Estate of Margaret Kennedy<br>Branstetter Murdaugh, and Randolph<br>Murdaugh, IV, as PR of the Estate of Paul<br>Terry Murdaugh,<br>                              Defendants. | Civil Action No.: 2019-CP-25-00111<br><br><br>**DEFENDANT RICHARD ALEXANDER<br>MURDAUGH'S MOTION FOR RELIEF<br>FROM TEMPORARY INJUNCTION** |

Defendant, Richard Alexander Murdaugh (Murdaugh) hereby moves the Court pursuant to this Court's Order Granting Temporary Injunction and Appointing Co-Receivers and Co-Receiver's Counsel entered November 4, 2021 ("Order"), to allow Murdaugh to pay attorneys' fees and costs from his 401K retirement account to defend against murder and related charges pending in Indictment Nos. 2022-GS-15-592 – 595. Murdaugh is scheduled for trial[1] on these charges beginning Monday, January 23, 2023, in the Colleton County Court of General Sessions. As discussed below, normally, Murdaugh's 401K account would not fall within the parameters of the Order, but the Receiver contends that if such amounts are withdrawn from the 401K account, those proceeds become subject to the Order. For this reason, Murdaugh requests the Court allow Murdaugh to direct the proceeds from his 401K account to pay his legal fees as described below.

---

[1] The trial is expected to last three (3) weeks.

ELECTRONICALLY FILED - 2022 Oct 13 9:49 AM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

In support of this Motion, Defendant states:

1. From January 1, 2000, to September 3, 2021, Murdaugh was a participant in Peters, Murdaugh, Parker, Elzroth & Detrick PA (PMPED) 401K Profit Sharing Plan. *Aff. Jeanne Seckinger*, ¶ 4, attached as **Exhibit 1**.

2. This profit-sharing plan is a matching contribution plan where PMPED's employee contributions are deducted directly from its employees' compensation prior to the employee having access to the same and matched with a PMPED contribution. Id. at ¶ 5.

3. Murdaugh contributed a portion of his compensation into the profit-sharing plan, which was matched by PMPED each year beginning in 2000 and ending in 2021. Id. at ¶ 6.

4. All funds contributed by Murdaugh into the 401K account came from PMPED's financial accounts prior to Murdaugh receiving the same and represented a portion of Murdaugh's compensation. Id. at ¶ 7.

5. Murdaugh did not contribute any funds into the 401K account that originated from any personal financial accounts or from any other financial accounts that were not owned by PMPED.

6. Murdaugh's 401K account is not subject to seizure or attachment by the Receiver or creditors. Specifically, S.C. Code Section 15-41-30 exempts a debtor's right to receive property that is traceable to a payment under a profit sharing plan from attachment, levy or sale issued by a court or bankruptcy proceeding.

7. Furthermore, to deny Murdaugh access to these funds to pay counsel of his choice would violate the 6th Amendment to the United States Constitution. See *Luis v. United States*, 578 U.S. 5, 10, 136 S. Ct. 1083, 1088, 194 L. Ed. 2d 256 (2016) (the pretrial restraint of

ELECTRONICALLY FILED - 2022 Oct 13 9:49 AM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment)

Based upon the foregoing, the Defendant respectfully requests that the Court modify the existing temporary injunction to permit Murdaugh to pay attorneys' fees and costs from his 401K profit-sharing account to defend him against the murder and other charges pending in *State v. Murdaugh*, 2022-GS-15-592 – 595.

Respectfully Submitted.

s/ Richard A. Harpootlian
Richard A. Harpootlian, SC Bar No. 2725
Philip Barber
RICHARD A. HARPOOTLIAN, P.A.
1410 Laurel Street (29201)
Post Office Box 1090
Columbia, South Carolina 29202
(803) 252-4848
Facsimile (803) 252-4810
rah@harpootlianlaw.com
pdb@harpootlianlaw.com

James M. Griffin, SC Bar No. 9995
Margaret N. Fox, SC Bar No. 76228
GRIFFIN DAVIS LLC
4408 Forest Drive (29206)
Post Office Box 999
Columbia, South Carolina 29202
(803) 744-0800
jgriffin@griffindavislaw.com
mfox@griffindavislaw.com

Attorneys for Richard Alexander Murdaugh

October 13, 2022
Columbia, South Carolina.

*Renee S. Beach, as Personal Representative of the Estate of Mallory Beach v. Gregory Parker,*
*Inc., a/k/a Parker's Corporation d/b/a Parkers 55, et al.*
C/A No. 2019-CP-25-00111
Defendant Richard Alexander Murdaugh's Motion for Relief from Temporary Injunction

# EXHIBIT A

(Affidavit of Jeanne Seckinger, August 9, 2022)

ELECTRONICALLY FILED - 2022 Oct 13 9:49 AM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

ELECTRONICALLY FILED - 2022 Oct 13 9:49 AM - HAMPTON - COMMON PLEAS - CASE#2019CP250011

STATE OF SOUTH CAROLINA     )

                             )     **AFFIDAVIT OF JEANNE SECKINGER**

COUNTY OF HAMPTON        )

Personally appeared before me, Jeanne Seckinger, the undersigned who upon being duly sworn states:

1.    I have personal knowledge of the facts set forth in this Affidavit. I am a citizen of the State of South Carolina and am competent to swear to the matters set forth below and do so of my own free will.

2.    I am the Chief Financial Officer (hereinafter referred to as "CFO") for Parker Law Group, LLP, located in Hampton County, South Carolina.

3.    Prior to being CFO for Parker Law Group, LLP, I was CFO for Peters, Murdaugh, Parker, Eltzroth & Detrick, PA (hereinafter referred to as "PMPED") located in Hampton County, South Carolina.

4.    From January 1, 2000 to September 3, 2021, Richard Alexander Murdaugh (hereinafter referred to as "Alex"), was a participant in PMPED's 401k Profit Sharing Plan.

5.    PMPED's 401k Profit Sharing Plan is a matching contribution plan where PMPED's employee contributions are deducted from its employees' compensation and is matched with a PMPED contribution. PMPED also made profit sharing contributions during this period and a portion of Alex's balance was accumulated under the PMPED Money Purchase Pension which was merged into the PMPED 401k Profit Sharing Plan.

6.    Alex contributed a portion of his compensation into the 401k Profit Sharing Plan, which was matched by PMPED, each year beginning in 2000 and ending in 2021.

7.    All of the funds contributed by Alex into the 401k account came from PMPED's financial accounts and represented a portion of Alex's compensation.

1

ELECTRONICALLY FILED - 2022 Oct 13 9:49 AM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

8.     Alex did not contribute any funds into the 401k account that originated from any personal financial accounts, or from any other financial accounts that were not owned by PMPED.

9.     Under the 401k Profit Sharing Plan, Alex cannot access these funds unless he transfers his entire interest into a separate IRA roll-over account in his name. Alternatively, he can elect substantially equal installments over time.

I, Jeanne Seckinger, the undersigned acknowledge that after being placed under oath I make the above declaration of my own knowledge and belief and the statements herein are true to the best of my knowledge and belief. I further recognize, declare and verify that I am making the above declarations under the penalty of perjury that the foregoing is true and correct.

Jeanne Seckinger

Sworn to before me this
9th day of August, 2022.

Notary Public for South Carolina
My Commission Expires: 05 | 19 | 2025



ELECTRONICALLY FILED - 2022 Oct 21 4:24 PM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| ) | FOURTEENTH JUDICIAL CIRCUIT |
| COUNTY OF HAMPTON ) | |
| ) | CASE NO.: 2019-CP-25-00111 |
| Renee S. Beach, as Personal Representative of ) | |
| the Estate of Mallory Beach, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **CO-RECEIVERS CONSENT RESPONSE** |
| v. ) | **TO RICHARD ALEXANDER** |
| ) | **MURDAUGH'S MOTION FOR RELIEF** |
| ) | **FROM INJUNCTION REGARDING** |
| Gregory M. Parker, Inc. a/k/a Parker's ) | **THE DISTRIBUTION OF 401K FUNDS** |
| Corporation d/b/a Parkers 55, Luther's Rate ) | |
| and Well Done, LLC, Kristy C. Wood, James ) | |
| M. Wood, Richard Alexander Murdaugh, ) | |
| Richard Alexander Murdaugh, Jr.; Randolph ) | |
| Murdaugh, III, Individually and as Trustee of ) | |
| the Murdaugh Residence Trust 2; and The ) | |
| Murdaugh Residence Trust 2, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Peter M. McCoy, Jr. and John T. Lay, Jr. ("Co-Receivers") submit this Response with the consent of Defendant Richard Alexander Murdaugh ("Murdaugh") to Murdaugh's Motion for Relief from Temporary Injunction ("Motion"). The Co-Receivers and Murdaugh seek approval of an agreement between the Co-Receivers and Murdaugh resolving the Motion. In his Motion, Murdaugh proposes to liquidate his 401K retirement account to fund his legal defense to criminal allegations asserted against him.

The Co-Receivers appreciate that unless the 401K funds are withdrawn and come within Murdaugh's control, they are beyond the reach of the Co-Receivers and are statutorily protected from the Co-Receiver's garnishment. Thus, but for Murdaugh's voluntary liquidation of his 401K fund, the Co-Receivers would never have the ability to access those assets. The Co-Receivers also

ELECTRONICALLY FILED - 2022 Oct 21 4:24 PM - HAMPTON - COMMON PLEAS - CASE#2019CP250000111

acknowledge Murdaugh is facing significant criminal charges and that mounting a defense to the same may be costly.  After discussion and negotiation, the Co-Receivers and Murdaugh have reached an agreement whereby the Co-Receivers do not oppose Murdaugh's ability to acquire funds from his 401K fund for use in his criminal defense.  In exchange Murdaugh has agreed that a portion of the 401K fund will be provided to the Co-Receivers for the Receivership Estate.  Therefore, the Co-Receivers, with the consent of Murdaugh, request that the Court, in response to Murdaugh's Motion, enter an Order including the following conditions:

1. Murdaugh liquidates the entirety of his 401K account and pays the resulting tax liabilities and penalties associated with the same;

2. Murdaugh retains $600,000 for the sole purpose of funding his criminal defense. Such funds will be immediately transferred to his counsel to hold in trust and be used solely for legal expenses and costs associated with the defense of his criminal prosecution. To the extent any funds remain after the conclusion of any criminal trial and appeal thereof, they shall be provided to the Co-Receiver for deposit to the receivership's Qualified Settlement Fund (the "Fund");

3. The remainder of funds made available by Murdaugh's liquidation of his 401K account shall be provided to the Co-Receivers for deposit to the Fund for administration consistent with the Receivership as ordered by the Court; and

4. Murdaugh shall not use any money so withdrawn for any other purposes.

The above proposal furthers and is consistent with the Co-Receivers' duties and obligations and accrues to the benefit of Murdaugh's creditors and potential creditors.  The Co-Receivers obtain access to and control over funds otherwise statutorily restricted from the Receivership. In the absence of the relief sought, these funds may remain in Murdaugh's 401K indefinitely. Based on estimates of

ELECTRONICALLY FILED - 2022 Oct 21 4:24 PM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

federal tax penalties and tax liabilities, the Co-Receivers anticipate they will receive approximately $300,000 as a result of this proposal. Meanwhile, the funds retained by Murdaugh are restricted to legal defense and not permitted to be used for living expenses or other indulgences. No funds liquidated under this proposal would remain available to Murdaugh for any other purpose at any time – both now and after his criminal prosecution. Therefore, the proposal increases the fund's value for the benefit of Mr. Murdaugh's creditors.

The above proposal would inure to the benefit of the Court, the Fund, and Murdaugh's creditors. Therefore, for the reasons stated herein, the Co-Receivers request the Court grant Murdaugh's motion subject to the restrictions detailed herein.

**CO-RECEIVERS JOHN T. LAY, JR. AND PETER M. McCOY, JR.**

*s/Jordan M. Crapps*
Amy L.B. Hill, SC Bar No. 68541
Richardson Thomas, LLC
1513 Hampton Street
Columbia, South Carolina 29201
Amy@richardsonthomas.com
(803) 281-8150 Ofc

Jordan M. Crapps, SC Bar No. 100580
Kate Mettler, SC Bar No. 103762
Gallivan, White & Boyd, P.A.
P.O. Box 7368
Columbia, SC  29202-7368
jcrapps@gwblawfirm.com
kmettler@gwblawfirm.com
(803) 779-1833 Ofc

*Counsel for Co-Receivers*

October 21, 2022

**WE CONSENT:**

<u>s/ Richard A. Harpootlian</u>
Richard A. Harpootlian, SC Bar No. 2725
Philip Barber
RICHARD A. HARPOOTLIAN, P.A.
1410 Laurel Street (29201)
Post Office Box 1090
Columbia, South Carolina 29202
(803) 252-4848
rah@harpootlianlaw.com
pdb@harpootlianlaw.com

James M. Griffin, SC Bar No. 9995
Margaret N. Fox, SC Bar No. 76228
GRIFFIN DAVIS LLC
4408 Forest Drive (29206)
Post Office Box 999
Columbia, South Carolina 29202
(803) 744-0800
jgriffin@griffindavislaw.com
mfox@griffindavislaw.com

*Attorneys for Richard Alexander Murdaugh*

ELECTRONICALLY FILED - 2022 Oct 21 4:24 PM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

ELECTRONICALLY FILED - 2022 Sep 19 11:31 AM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | FOURTEENTH JUDICIAL CIRCUIT |
| COUNTY OF HAMPTON | ) | |
| | ) | CASE NO.: 2019-CP-25-00111 |
| Renee S. Beach, as Personal Representative of | ) | |
| the Estate of Mallory Beach, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| v. | ) | |
| | ) | |
| | ) | |
| Gregory M. Parker, Inc. a/k/a Parker's | ) | |
| Corporation, Richard Alexander Murdaugh, | ) | |
| Richard Alexander Murdaugh, Jr.; John | ) | |
| Marvin Murdaugh, as Personal Representative | ) | |
| of the Estate of Margaret Kennedy Branstetter | ) | |
| Murdaugh, and Randolph Murdaugh, IV, as | ) | |
| Personal Representative of the Estate of Paul | ) | |
| Terry Murdaugh, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court by Peter M. McCoy, Jr. and John T. Lay, Jr. ("Co-Receivers")

Motion for Consideration and Approval of a Proposed Settlement with Palmetto State Bank dated

August 19, 2022, by.  A hearing was held on September 1, 2022. For the reasons presented in the

Motion and at the hearing, it is hereby ORDERED that the Motion is granted. The Co-Receivers

are permitted to execute the Settlement Agreement with Palmetto State Bank attached hereto is

**Exhibit A**.

1

ELECTRONICALLY FILED - 2022 Sep 19 11:31 AM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

*(Judge's Electronic Signature Page to Follow)*

2

ELECTRONICALLY FILED - 2022 Sep 19 11:31 AM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111



Hampton Common Pleas

**Case Caption:**   Renee S. Beach , plaintiff, et al VS   Gregory M. Parker, Inc. ,
                    defendant, et al

**Case Number:**    2019CP2500111

**Type:**           Order/Approval Of Settlement

So Ordered

s/Daniel D. Hall  2753

Electronically signed on 2022-09-19 10:53:58     page 3 of 3

ELECTRONICALLY FILED - 2022 Sep 15 4:04 PM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111
ELECTRONICALLY FILED - 2022 Sep 19 11:31 AM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

**SETTLEMENT AGREEMENT AND RELEASE**

This Settlement and Release Agreement ("Agreement") is made this _____ day of

_____, 2022 by and between John T. Lay, Jr. and Peter M. McCoy, Jr. as Co-Receivers

("Receivers") and Palmetto State Bank, N.A. ("Bank") in order to resolve all outstanding debt

owed by R. Alexander Murdaugh ("Alex Murdaugh") either directly or indirectly[1] to the Bank

as well as all claims and defenses of Alex Murdaugh or the Receivers arising out of or related to

such debt or any financial transactions involving Alex Murdaugh and the Bank including those

in which Russell Laffitte participated in his capacity as an employee or officer of the Bank or in

a personal fiduciary capacity (hereinafter collectively the "Settled Debts and Claims").  Except

as specifically provided for herein, it is the Receivers' and the Bank's intention that this

Agreement shall resolve the Settled Debts and Claims.

The Receivers were appointed by Order of the Honorable Judge Daniel D. Hall dated

November 4, 2021 ("Receiver Order")[2]  for the purpose of securing and maintaining Alex

Murdaugh's assets and as otherwise stated therein.  The Receivers, as part of their instructions

from the Receivership Court, have undertaken to review and consider Alex Murdaugh's various

assets in order to establish and maintain the assets subject to the receivership ("Receivership

Estate").  As a part of their appointment, the Receivers reviewed all Palmetto State Bank

outstanding debt, as listed in this Agreement, impacting Alex Murdaugh's assets and his financial

condition, as well as many of the records relating to his accounts with the Bank.  The following

---

[1] This Agreement encompasses debt owed by 0 United Drive, LLC and Redbeard, LLC to the Bank as Alex Murdaugh
has an ownership interest in both entities.

[2] The Receivers were appointed in the matter *Renee S. Beach, as Personal Representative of the Estate of Mallory
Beach vs. Gregory M. Parker, Inc. a/k/a Parker's Corporation d/b/a Parkers 55, Luther's Rate and Well Done, LLC,
Kristy C. Wood, James M. Wood, Richard Alexander Murdaugh, Richard Alexander Murdaugh, Jr., Randolph
Murdaugh, III, Individually and as Trustee of the Murdaugh Residence Trust 2, and The Murdaugh Residence Trust
2* Civil Action No. 2019-CP-25-00111 ("the Beach Case").

ELECTRONICALLY FILED - 2022 Sep 15 4:04 PM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111
ELECTRONICALLY FILED - 2022 Sep 19 11:31 AM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

Agreement represents the culmination of the Receiver's assessment and lengthy negotiations with the Bank resulting in a compromise of disputed claims and defenses.

The debt this Agreement applies to include the following loans (collectively "Loans" or delineated as "Secured Loans" and "Unsecured Loans"):

1. **Loan Number 6974140**. Secured by a mortgage filed in Berkeley County against real estate owned by 0 United Drive, LLC (along with Loan 6974141 "Berkeley County Properties").

2. **Loan Number 6974141**. Secured by a mortgage filed in Berkeley County against real estate owned by Redbeard, LLC.

3. **Loan Number 6979180**. Secured by property at 3606 Big Bay Drive Edisto, SC in Colleton County.

4. **Loan Number 6978806**. Secured by a portion of the property known as Moselle totaling approximately 914 acres.

5. **Loan Number 6987336**. Secured by the total property known as Moselle in both Hampton and Colleton County totaling approximately 1,770 acres.

6. **Loan Number 6970489**. Secured by a mortgage on various islands referred to as the Williams Islands as documented in Beaufort County.

7. **Loan Number 6991524**. Unsecured debt with Randolph Murdaugh III as co-borrower.

8. **Loan Number 6996048**. Unsecured debt.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and in consideration of the mutual undertakings and promises contained herein, the Receivers and the Bank (collectively "the Parties"), hereby agree as follows:

1. The Receivers (in their capacity as court-appointed receivers) and on behalf of Alex

ELECTRONICALLY FILED - 2022 Sep 15 4:04 PM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111
ELECTRONICALLY FILED - 2022 Sep 19 11:31 AM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

Murdaugh hereby release and forever discharge the Bank, its holding company (Palmetto Bankshares), its subsidiary corporations and companies, its past, current, and future directors, officers, employees, representatives, successors, and assigns from any and all causes of action, claims, losses, and defenses involving the Settled Debts and Claims, whether known or unknown, arising now or in the future, at law or in equity except as otherwise documented in this Agreement and so long as the Bank does not initiate an action against Alex Murdaugh outside of the Receivership Court, or an action within the Receivership Court for seeking damages other than those directly and specifically related to the Loans described below. In the event the Bank initiates an action outside of the Receivership Court or an action seeking damages other than those directly and specifically related to the Loans, Alex Murdaugh and the Receivers on his behalf will be entitled to raise any and all defenses available to him as well as bring any claims against the Bank related to the particular action. This release excludes all rights of the Receivers and obligations of the Bank established by the terms of this Agreement.

2. Pursuant to the Order for Temporary Injunction entered on November 4, 2021 in the Beach Case, Alex Murdaugh is barred from encumbering his assets. Although the Bank has no intention of doing so, the Bank agrees it will not extend any additional funds to Alex Murdaugh in a manner that will encumber any of Alex Murdaugh's assets without first seeking the approval of the Receivership Court so long as the Receivership remains in place. The Bank's obligation not to encumber any of Alex Murdaugh's assets as described in this Paragraph shall not be understood to exclude its right to seek payment of the amounts still outstanding on any Unsecured Loans and any Secured Loans (after receipt of the payments to be applied against the principal amount of the respective

ELECTRONICALLY FILED - 2022 Sep 15 4:04 PM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111
ELECTRONICALLY FILED - 2022 Sep 19 11:31 AM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

Secured Loans to release the Bank's mortgage liens from the sale of the real properties) from the Receivership Estate or the Receivership Court for the satisfaction of the unpaid indebtedness of Alex Murdaugh as further described herein, which claims shall not be considered an action outside of the Receivership Court or an action seeking damages other than those directly and specifically related to the Loans

3.  The Bank will dismiss **with prejudice,** within three (3) business days after the Court approval of this Settlement Agreement, the action entitled *Palmetto State Bank – Hampton a/k/a Palmetto State Bank vs. E. David Grubbs, Jr., Thomas M. Boulware, and Joshua M. Hulen* Civil Action No. 2022-CP-10-02415 filed on May 26, 2022 in an attempt to collect against guaranties of the debt owed by 0 United Drive, LLC and Redbeard, LLC.  The dismissal is attached hereto as **Exhibit A**.

4.  The Bank further agrees to release David Grubbs, Thomas Boulware and Josh Hulen from any and all claims it might have against those individuals for payment of or contribution towards any debt owed by Alex Murdaugh, 0 United Drive, LLC and Redbeard, LLC to the Bank or any deficiency judgment(s) the Bank obtains in the future related to debt owed by Alex Murdaugh, 0 United Drive, LLC, and Redbeard, LLC. The Mutual General Release between the Bank, Hulen, Grubbs and Boulware is attached hereto as **Exhibit B** ("Release").  The Bank, Grubbs, Hulen and Boulware will execute the Release withing three (3) business days after the Court approval of this Settlement Agreement.  The Release shall include a provision specifying that any and all guaranty documents executed by David Grubbs, Thomas Boulware, and Josh Hulen securing any debt owed by Alex Murdaugh, 0 United Drive, LLC or Redbeard, LLC are deemed to be void.

ELECTRONICALLY FILED - 2022 Sep 15 4:04 PM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111
ELECTRONICALLY FILED - 2022 Sep 19 11:31 AM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

5. The Bank will dismiss without prejudice the foreclosure action initiated against 0 United Drive, LLC and Redbeard, LLC in Berkeley County. The dismissal is attached hereto as **Exhibit C**.

6. The Bank agrees not to seek any separate debt collection from Alex Murdaugh or entities in which Alex Murdaugh has an interest except by and through the Receivership Court with the exception that the Bank may initiate a foreclosure action against the Berkeley County Properties pursuant to the following terms and conditions:

   a. The Bank shall not initiate any such foreclosure action prior to July 1, 2024 or the termination of the Receivership, whichever is later;

   b. To the extent the foreclosure action is initiated while the Receivership is still in place, such foreclosure action shall be limited to the amounts detailed in Paragraph 7 below; and

   c. To the extent the Bank brings a foreclosure action in regard to the Berkeley County Properties and the underlying Secured Loans at such time as permitted by this Section 6, Alex Murdaugh and the Co-Receivers retain and may assert any and all defenses, counterclaims, and arguments that it has against the Bank in such action as if this Agreement did not exist.

7. The Bank agrees to release its mortgage liens securing the various Secured Loans and execute recordable releases of such mortgage lien upon the Bank's receipt of the following amounts (all specified amounts shall be paid by wire transfer directly to the Bank at the time of closing on the sale of the applicable property):

   - **Loan Number 6974140**. The mortgage(s) securing any property owned by 0 United Drive, LLC will be released upon the Bank's receipt of: $257,761.82.

ELECTRONICALLY FILED - 2022 Sep 15 4:04 PM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111
ELECTRONICALLY FILED - 2022 Sep 19 11:31 AM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

- **Loan Number 6974141.**  The mortgage(s) securing any property owned by Redbeard, LLC will be released upon the Bank's receipt of $312,896.71.

- **Loan Number 6979180.**  The mortgage(s) securing the property located at 3606 Big Bay Drive Edisto, SC was released upon the Bank's receipt of:  $153,329.71 plus receipt of the amounts paid for taxes and insurance by the Bank for this property.

- **Loan Numbers 6978806 and 6987336.**  The Bank hereby grants to the Receivers the right to receive $150,000 of the principal amount of these two loans as well all the accrued interest and late fees at the time of the sale of the properties secured by these two mortgages. The mortgages filed on the property known as Moselle totaling approximately 1,770 acres ("Moselle Mortgages") and securing both loans numbers 6978806 and 6987336 ('Moselle Loans') shall be released upon: 1) the payment to the Bank from closing of $1,690,856.22 of principal plus the amount of property taxes paid by the Bank and the amount of the premiums paid by the Bank for force-placed property insurance) **and** 2) the payment to the Receivership Estate from closing of $150,000 plus any and all late fees and interest due and owing on the Moselle Loans as of the date of the sale.  The Bank will not release the Moselle Mortgages until such amounts have been received by the Bank and Receivership Estate.  In the event the Moselle Property is sold in separate parcels such that the loans are repaid at different times, the Bank shall receive the principal amount of that the first applicable Moselle Loan less $150,000 plus the amount of any property taxes and force-placed insurance on that property and the Receivership Estate shall receive $150,000 plus all late fees

ELECTRONICALLY FILED - 2022 Sep 15 4:04 PM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111
ELECTRONICALLY FILED - 2022 Sep 19 11:31 AM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

and interest due on that Moselle Loan as of the date of sale. On the sale of the second Moselle property, the Bank shall receive 100% of the outstanding principal of that Moselle Loan plus the amount of any property taxes and the amount of the premiums paid by the Bank for force-placed insurance on that property, and the Receivership Estate shall receive the interest and late fees due on that Mosselle Loan at the time of closing. If there are separate sales, the Bank shall not release the respective Moselle Mortgages until the respective payments are made to both the Bank and the Receivership Estate.   In no event shall the Bank receive more than a total of $1,690,856.22 in principal plus repayment of property taxes and force-placed insurance at the time of the sales of Moselle Properties.    The Bank and the Receivers shall provide notice of any sale or proposed sale of Moselle to the other within two (2) days of either receiving notice of such sale.  Prior to sending a pay-off amount to any closing attorney, current owner of Moselle, or potential buyer, the Bank shall provide the Receivers with written notice of the pay-off amount, which shall include the itemized amounts owed to both the Bank and the Receivers pursuant to this Agreement.  This notice of the pay-off amount prior to providing the same to a third party allows the Receivers the ability to understand the calculation of late fees and interest due upon the date of the sale as well as insure the correct amount will be transmitted to the Receivership Estate from the closing. The Bank shall instruct the closing attorney to disburse the payoff amount to the Bank and the Receivership Estate at closing per the terms of this section and shall provide a copy of such instructions to the attorney for the Receivers when transmitted.

ELECTRONICALLY FILED - 2022 Sep 15 4:04 PM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111
ELECTRONICALLY FILED - 2022 Sep 19 11:31 AM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

- **Loan Number 6970489.** The mortgage lien on property referred to as the Williams Islands as documented by filings in Beaufort County will be released upon the Bank's receipt of $54,119.80.

As reflected in the above amounts, the Bank will not receive or collect any interest, attorney's fees, and late charges associated with the Loans at the time of a sale as a condition precedent to releasing the associated mortgage lien.

8. Nothing in this Agreement precludes the Bank from seeking payment by application to the Receivership Court for any amounts of outstanding principal, interest and late fees for the Loans that remain unpaid and unassigned after the release of the above listed mortgage liens. Except as provided herein, the Receivers agree that they shall not contend in any such proceeding that the underlying obligations or promissory notes of the Bank are void or invalid in any manner, consistent with the release and settlement of the Settled Debts and Claims herein. Nothing in this Agreement shall constitute a release or discharge by the Bank of any claims, causes of action, rights, or remedies it has against Alex Murdaugh related to the Loans or otherwise.

9. The Receivers agree to withdraw the current outstanding subpoena to the Bank dated March 2, 2022 as well as the current outstanding subpoena to Russell Laffitte dated April 22, 2022, and agree to refrain from issuing future subpoenas on the Bank or causing them to be issued through others except in the course of the Receivers' investigation of Alex Murdaugh's or Buster Murdaugh's assets; any such subpoena shall be narrowly crafted to target the particular records sought. Before issuing such subpoena, the attorney for the Receivers shall communicate with the attorneys for the Bank to provide them advance notice, the reason for the subpoena, and the scope of the subpoena.

ELECTRONICALLY FILED - 2022 Sep 15 4:04 PM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111
ELECTRONICALLY FILED - 2022 Sep 19 11:31 AM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

10. The Receivers agree to close Russell Laffitte's current outstanding deposition initiated on February 24, 2022 that was adjourned with the exception that the Receivers may seek additional information from Russell Laffitte related to his knowledge of Alex Murdaugh's assets and the value of the same.

11. This Agreement is entirely contingent on its approval by the Receivership Court. Upon approval, this Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors, assigns and heirs and with regard to the Bank, its officers, employees, current and former board members, representatives, agents, counsel, shareholders, members, assigns, successors, subsidiary or parent entities.

12. This Agreement shall be governed by and interpreted in accordance with the laws of the State of South Carolina.

13. This Agreement may be executed in counterparts, and all counterparts shall be deemed to constitute a single agreement. The execution and delivery of such counterpart by any person shall have the same force and effect as if that person had executed all other counterparts.

14. All Parties agree and understand that time is of the essence as it pertains to sales of the properties in question and that all Parties will work diligently with respect to their respective obligations herein associated with such sales in a timely manner.

15. All prior negotiations, representations, and agreements between the Parties of any kind relating to the disputes settled in this Agreement, whether oral, written, express, implied, collateral or concurrent, are merged into this Agreement, and this Agreement shall constitute the complete and total agreement of the Settling Parties of any such disputes such that if the terms of this Agreement conflict with the terms of a prior agreement between the Parties, this Agreement controls.

ELECTRONICALLY FILED - 2022 Sep 15 4:04 PM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111
ELECTRONICALLY FILED - 2022 Sep 19 11:31 AM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

16. No modification of this Agreement shall be effective unless in writing and signed by all the Parties and approved by the Receivership Court.

17. By executing this Agreement, the undersigned representative of the Bank stipulates, agrees and warrants that he or she has the necessary and appropriate authority and capacity to execute this Agreement and to make this Agreement fully binding upon and enforceable against the Bank.

18. By entering into this Agreement, the Bank stipulates, agrees and warrants as follows:

    a. The terms of this Agreement are reasonable;

    b. The Bank is the sole and lawful owner of all rights and interests in the Loans and their associated contracts, Promissory Notes, Guaranties, and mortgages and the Bank has not assigned, transferred, or conveyed (1) any right to collect the above referenced Loans or (2) any contract, Promissory Note, Guaranty, or Mortgage associated with the Loans or any right to enforce or collect the same except for the right granted to the Receivers in Paragraph 7 herein related to the Moselle Loans. ..

    c. The Bank is aware of no mortgage or lien it possesses against the above referenced properties other than those detailed herein that would prevent the Receivers from conveying clean title. To the extent any such mortgages or liens are discovered, they will be released pursuant to the terms detailed herein.

    d. The Bank is aware of no other Secured Loan owed to the Bank by Alex Murdaugh other than those listed in this Agreement.

19. Each of the Parties has participated equally in the drafting of this Agreement and, as such, this Agreement shall be construed equally in favor of all Parties and shall not be construed against any of the Parties due to the identity of the drafter.

20. The Parties represent and agree that they have had a full opportunity to read the terms of this Agreement and to have counsel of their choice explain the terms of this Agreement to them. The Parties further represent and agree that they understand the terms of this Agreement, agree to those terms and execute this Agreement voluntarily and without duress of any kind.

21. This Agreement settles and compromises contested claims and defenses to avoid the expense, risk, and other burdens of extended litigation. Neither this Agreement nor any provision herein shall be considered an admission of liability, fault or wrongdoing by the Parties hereto who deny such alleged liability, fault or wrongdoing.

22. No statements or agreements set forth in this Agreement shall in any way inure to the benefit of any third party. This Agreement shall not create or give to any third person or entity any right, claim, benefit, defense or cause of action against any party hereto nor shall it be construed as any admission by any party that any compensation is owed to any third party not specifically identified in this Agreement.

ELECTRONICALLY FILED - 2022 Sep 15 4:04 PM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111
ELECTRONICALLY FILED - 2022 Sep 19 11:31 AM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

**– SIGNATURE PAGE –**

**SETTLEMENT AND RELEASE AGREEMENT BY AND BETWEEN**

John T. Lay, Jr., Esquire, Co-Receiver

Date: _____ 9 / 2-1 / 22

Peter M. McCoy, Jr., Esquire, Co-Receiver

Date: _____ 9-22-22

Palmetto State Bank, N.A.
By and through its _____.

_____
Printed Name

_____
Signature

Date: _____

ELECTRONICALLY FILED - 2022 Sep 15 4:04 PM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111
ELECTRONICALLY FILED - 2022 Sep 19 11:31 AM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

**- SIGNATURE PAGE –**

**SETTLEMENT AND RELEASE AGREEMENT BY AND BETWEEN**

John T. Lay, Jr., Esquire, Co-Receiver

_____

Date: _____

Peter M. McCoy, Jr., Esquire, Co-Receiver

_____

Date: _____

Palmetto State Bank
By and through its _____PRESIDENT_____.

_____J.M. MALINOWSKI_____
Printed Name

_____
Signature

Date: _____September 26, 2022_____

# EXHIBIT A

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

Palmetto State Bank—Hampton a/k/a Palmetto
State Bank,

                          Plaintiff,

    vs.

E. David Grubbs, Jr., Thomas M. Boulware,
and Joshua M. Hulen,

                          Defendants.

IN THE COURT OF COMMON PLEAS
FIFTH JUDICIAL CIRCUIT

Civil Action No.: 2022-CP-10-02415


**STIPULATION OF DISMISSAL
WITH PREJUDICE**

ELECTRONICALLY FILED - 2022 Sep 15 4:04 PM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111
ELECTRONICALLY FILED - 2022 Sep 19 11:31 AM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

Palmetto State Bank – Hampton a/k/a Palmetto State Bank, E. David Grubbs, Jr., Thomas

M. Boulware, and Joshua M. Hulen (collectively "the Parties"), by and through their attorneys

below, have reached a satisfactory resolution of the issues raised in this matter and wish to end

this action pursuant to Rule 41 of the South Carolina Rules of Civil Procedure. All parties hereto

agree to bear their own costs and expenses associated with this action, and their undersigned

counsel stipulate to dismiss the action with prejudice.


WE SO STIPULATE AND AGREE:


_____
G. Trenholm Walker, SC Bar No. 5777
Thomas P. Gressette, Jr., SC Bar No. 14065
James W. Clement, SC Bar No. 102467
Walker Gressette & Linton, LLC
PO Drawer 22167, Charleston, SC 29413
66 Hassell Street, Charleston, SC 29401
Walker@WGLFIRM.com
Gressette@WGLFIRM.com
Clement@WGLFIRM.com
(843) 727-2200 Office

*Attorneys for Plaintiff*

_____
D. Jay Davis, Jr., SC Bar No. 12084
Clement Rivers, LLP
25 Calhoun Street, Suite 400
Charleston, SC 29401
jdavis@ycrlaw.com
843-720-5406 Office

*Attorney for Defendants*

1

# EXHIBIT B

### SETTLEMENT AGREEMENT AND RELEASE

This Settlement and Release Agreement ("Agreement") is made this _____ day of

_____, 2022 by and between E. David Grubbs, Jr. and Thomas M. Boulware (together the

"Guarantors") and Palmetto State Bank – Hampton a/k/a Palmetto State Bank a/k/a Palmetto

State Bank, N.A. (the "Bank") in order to resolve any and all outstanding debt owed to the Bank

by Guarantors arising out of, related to or in connection with the following loans: (i) **Loan

Number 6974140, s**ecured by a mortgage filed in Berkeley County against real estate owned by

0 United Drive, LLC (along with Loan 6974141 "Berkeley County Properties"); and (ii) **Loan

Number 6974141, s**ecured by a mortgage filed in Berkeley County against real estate owned by

Redbeard, LLC (Loan Number 6974140 and Loan Number 6974141 are together referred to as

the :Loans") (hereinafter collectively the "Settled Debts and Claims").  It is the intent of

Guarantors and the Bank that this Agreement shall resolve the Settled Debts and Claims.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of

which are hereby acknowledged, and in consideration of the mutual undertakings and promises

contained herein, the Guarantors and the Bank (collectively "the Parties"), hereby agree as

follows:

1.     The Guarantors hereby release and forever discharge the Bank, its holding company

(Palmetto Bankshares), its subsidiary corporations and companies, its past, current, and future

directors, officers, employees, representatives, successors, and assigns from any and all causes of

action, claims, losses, and defenses involving the Settled Debts and Claims, whether known or

unknown, arising now or in the future, at law or in equity. This release excludes all rights of the

Guarantors and obligations of the Bank established by the terms of this Agreement.

2.     The Bank will dismiss with prejudice, within three (3) business days after the Court

ELECTRONICALLY FILED - 2022 Sep 15 4:04 PM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111
ELECTRONICALLY FILED - 2022 Sep 19 11:31 AM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

ELECTRONICALLY FILED - 2022 Sep 15 4:04 PM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111
ELECTRONICALLY FILED - 2022 Sep 19 11:31 AM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

approval of this Settlement Agreement, the action entitled Palmetto State Bank – Hampton a/k/a Palmetto State Bank vs. E. David Grubbs, Jr., Thomas M. Boulware, and Joshua M. Hulen Civil Action No. 2022-CP-10-02415 filed on May 26, 2022 in an attempt to collect against guaranties of the debt owed by 0 United Drive, LLC and Redbeard, LLC. The dismissal is attached hereto as Exhibit __.

3.    The Bank does hereby release and forever discharge Guarantors from any and all claims Bank might have against Guarantors for payment of or contribution towards any debt owed by 0 United Drive, LLC and Redbeard, LLC to the Bank or any deficiency judgment(s) the Bank obtains in the future related to debt owed by 0 United Drive, LLC and Redbeard, LLC. Any and all guaranty documents executed by Guarantors securing any debt owed by 0 United Drive, LLC or Redbeard, LLC are deemed to be void.

4.    The Bank will dismiss without prejudice the foreclosure actions initiated against 0 United Drive, LLC and Redbeard, LLC in Berkeley County. The parties shall bear their respective attorneys' fees and costs. The dismissals are attached hereto as Exhibit __.

5.    The Bank hereby deems any Guaranties executed by the Guarantors involving the Loans to be void.

6.    This Agreement shall be governed by and interpreted in accordance with the laws of the State of South Carolina.

7.    This Agreement may be executed in counterparts, and all counterparts shall be deemed to constitute a single agreement. The execution and delivery of such counterpart by any person shall have the same force and effect as if that person had executed all other counterparts.

8.    All Parties agree and understand that time is of the essence as it pertains to sales of the properties in question and that all Parties will work diligently with respect to their respective

ELECTRONICALLY FILED - 2022 Sep 15 4:04 PM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111
ELECTRONICALLY FILED - 2022 Sep 19 11:31 AM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

obligations herein associated with such sales in a timely manner.

9.     All prior negotiations, representations, and agreements between the Parties of any kind relating to the disputes settled in this Agreement, whether oral, written, express, implied, collateral or concurrent, are merged into this Agreement, and this Agreement shall constitute the complete and total agreement of the Settling Parties of any such disputes such that if the terms of this Agreement conflict with the terms of a prior agreement between the Parties, this Agreement controls.

10.     No modification of this Agreement shall be effective unless in writing and signed by all the Parties.

11.     By executing this Agreement, the undersigned representative of the Bank stipulates, agrees and warrants that he or she has the necessary and appropriate authority and capacity to execute this Agreement and to make this Agreement fully binding upon and enforceable against the Bank.

12.     By entering into this Agreement, the Bank stipulates, agrees and warrants as follows:

    a.    The terms of this Agreement are reasonable;

    b.    The Bank is the sole and lawful owner of all rights and interests in the Loans and their associated contracts, Promissory Notes, Guaranties, and mortgages, and the Bank has not assigned, transferred, or conveyed (1) any right to collect the above referenced Loans or (2) any contract, Promissory Note, Guaranty, or Mortgage associated with the Loans or any right to enforce or collect the same.

13.     By entering into this Agreement, the Guarantors stipulate, agree and warrant as follows:

    a.    The terms of this Agreement are reasonable;

ELECTRONICALLY FILED - 2022 Sep 15 4:04 PM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111
ELECTRONICALLY FILED - 2022 Sep 19 11:31 AM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

    b.   The Guarantors are the sole and lawful owner of all rights and interests in the claims being released herein and have not assigned, transferred, pledged or otherwise encumbered such claims

14.    Each of the Parties has participated equally in the drafting of this Agreement and, as such, this Agreement shall be construed equally in favor of all Parties and shall not be construed against any of the Parties due to the identity of the drafter.

15.    The Parties represent and agree that they have had a full opportunity to read the terms of this Agreement and to have counsel of their choice explain the terms of this Agreement to them. The Parties further represent and agree that they understand the terms of this Agreement, agree to those terms and execute this Agreement voluntarily and without duress of any kind.

16.    This Agreement settles and compromises contested claims and defenses to avoid the expense, risk, and other burdens of extended litigation. Neither this Agreement nor any provision herein shall be considered an admission of liability, fault or wrongdoing by the Parties hereto who deny such alleged liability, fault or wrongdoing.

17.    No statements or agreements set forth in this Agreement shall in any way inure to the benefit of any third party. This Agreement shall not create or give to any third person or entity any right, claim, benefit, defense or cause of action against any party hereto nor shall it be construed as any admission by any party that any compensation is owed to any third party not specifically identified in this Agreement.

*[Signature Page Follows.]*

*[Remainder of this Page Intentionally Left Blank.]*

**- SIGNATURE PAGE –**

**SETTLEMENT AND RELEASE AGREEMENT BY AND BETWEEN**

**Guarantors:**

_____
E. David Grubbs, Jr.

Date: _____


_____
Thomas M. Boulware

Date: _____


_____
Joshua M. Hulen

Date: _____

**Bank:**

Palmetto State Bank – Hampton a/k/a Palmetto State
Bank a/k/a Palmetto State Bank, N.A.
By and through its _____.


_____
Printed Name


_____
Signature

Date: _____

ELECTRONICALLY FILED - 2022 Sep 15 4:04 PM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111
ELECTRONICALLY FILED - 2022 Sep 19 11:31 AM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

# EXHIBIT C

ELECTRONICALLY FILED - 2022 Sep 15 4:04 PM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111
ELECTRONICALLY FILED - 2022 Sep 19 11:31 AM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS FIFTH JUDICIAL CIRCUIT |
| COUNTY OF CHARLESTON | |
| | Civil Action No.: 2022-CP-08-01239 |
| Palmetto State Bank—Hampton a/k/a Palmetto State Bank, | |
| Plaintiff, | **NOTICE OF DISMISSAL WITHOUT PREJUDICE** |
| vs. | |
| 0 United Drive, LLC, | |
| Defendant. | |

Palmetto State Bank – Hampton a/k/a Palmetto State Bank, by and through its attorneys below wishes to end this action pursuant to Rule 41 of the South Carolina Rules of Civil Procedure and therefore files this Notice of Dismissal Without Prejudice.

Respectfully Submitted,

_____
G. Trenholm Walker, SC Bar No. 5777
Thomas P. Gressette, Jr., SC Bar No. 14065
James W. Clement, SC Bar No. 102467
Walker Gressette & Linton, LLC
PO Drawer 22167, Charleston, SC 29413
66 Hassell Street, Charleston, SC 29401
Walker@WGLFIRM.com
Gressette@WGLFIRM.com
Clement@WGLFIRM.com
(843) 727-2200 Office

***Attorneys for Plaintiff Palmetto State Bank—Hampton a/k/a Palmetto State Bank***

_____, 2022

1

# EXHIBIT D

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

Palmetto State Bank—Hampton a/k/a Palmetto
State Bank,

                        Plaintiff,

        vs.

RedBeard, LLC,

                        Defendant.

IN THE COURT OF COMMON PLEAS
FIFTH JUDICIAL CIRCUIT

Civil Action No.: 2022-CP-08-01240

**NOTICE OF DISMISSAL
WITHOUT PREJUDICE**

        Palmetto State Bank – Hampton a/k/a Palmetto State Bank, by and through its attorneys

below wishes to end this action pursuant to Rule 41 of the South Carolina Rules of Civil

Procedure and therefore files this Notice of Dismissal Without Prejudice.

                                Respectfully Submitted,

                                _____
                                G. Trenholm Walker, SC Bar No. 5777
                                Thomas P. Gressette, Jr., SC Bar No. 14065
                                James W. Clement, SC Bar No. 102467
                                Walker Gressette & Linton, LLC
                                PO Drawer 22167, Charleston, SC 29413
                                66 Hassell Street, Charleston, SC 29401
                                Walker@WGLFIRM.com
                                Gressette@WGLFIRM.com
                                Clement@WGLFIRM.com
                                (843) 727-2200 Office

                                ***Attorneys for Plaintiff Palmetto State
                                Bank—Hampton a/k/a Palmetto State
                                Bank***

_____, 2022

ELECTRONICALLY FILED - 2022 Sep 15 4:04 PM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111
ELECTRONICALLY FILED - 2022 Sep 19 11:31 AM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

1



**AMY L. B. HILL**
A member of the South Carolina Bar
*Direct Dial: 803.724.1716*
ahill@GWBlawfirm.com

*Complex experience for complex matters*

June 7, 2022

***Sent Via U.S. Mail & Email***
William G. Newsome, III, Esq.
1501 Main Street, Suite 601
Columbia, SC 29201
billy@newsomelawsc.com

> In Re: The Estate of Margaret Branstetter Murdaugh
> Case No.: 2021-ES-15-00347

Dear Billy:

Enclosed please find a Statement of Creditor's Claim and Complaint that was filed in the above matter.

With kind regards, I am

Sincerely,

GALLIVAN, WHITE & BOYD, P.A.

Amy L.B. Hill

Enclosures

| STATE OF SOUTH CAROLINA | ) | IN THE PROBATE COURT |
| COUNTY OF COLLETON | ) | |
| | ) | **STATEMENT OF CREDITOR'S CLAIM** |
| IN THE MATTER OF: | ) | |
| MARGARGET KENNEDY BRANSTETTER | ) | CASE NUMBER: ~~2021~~-ES-15-00347 |
| MURDAUGH | ) | 2021 |
| (Decedent) | ) | |

Decedent's Date of Death (if known): _JUNE 7, 2021_

Decedent's Last Mailing Address: _4147 MOSELLE ROAD, ISLANDTON, SOUTH CAROLINA_

| | |
|---|---|
| Creditor: | JOHN T. LAY, JR. AND PETER M. MCCOY, JR., AS RECEIVERS FOR THE RECEIVERSHIP ESTATE |
| Address: | C/O GALLIVAN, WHITE & BOYD, P.A., 1201 MAIN STREET, SUITE 1201, COLUMBIA, SOUTH CAROLINA 29201 |
| | |
| Telephone: | (803) 724-1716 |
| Email: | JLAY@GWBLAWFIRM.COM; PETER@MCCOYLAWGRP.COM |
| Original Creditor: | |
| Address (if different from above) | |
| | |
| Claim Amount Due: | $3,900,000.00 OR SUCH OTHER FAIR MARKET VALUE REPRESENTING THE PROPERTY KNOWN AS MOSELLE AND MORE FULLY DESCRIBED IN THE DEEDS FROM R. ALEXANDER MURDAUGH TO MARGARET B. MURDAUTH ON DECEMBER 20, 2016 |
| Account Number: | |
| Other Reference Number: | |
| Basis of claim (Ex: Contract, Services Rendered for decedent, etc): | FRAUDULENT CONVEYANCE OF MOSELLE BY R. ALEXADNER MURDAUGH TO DECEDENT ON DECEMBER 20, 2016 |
| Date claim will become due (if not already due) | PRESENTLY DUE |
| Nature of uncertainty as to the claim, if any (i.e. contingent claim, amount of claim, due date): | PRESENTLY DUE |
| Description of security as to the claim, if any (Ex: Collateral for the debt) | THE REAL PROPERTY TRANSFERRED FROM R. ALEXANDER MURDAUGH TO MARGARET B. MURDAUGH ON DECEMBR 20, 2016PURSUANT TO SC CODE SEC. 27-23-10 |

Signature: _[signature]_
Printed Name: _Amy L.B. Hill  attorney for_
Title: _Co-Receivers John T. Lay, Jr & Peter_
Date: _McCoy    June 6, 2022_

**INSTRUCTIONS:**    Claims **MUST** be filed with the Probate Court of the county in which the Decedent's Estate is under administration and may be delivered or mailed to the fiduciary appointed to administer the Estate (see SCPC 62-3-803, 62-3-804, and 62-3-806).

No claim against a Decedent's estate may be presented or legal action commenced against a Decedent's Estate prior to the appointment of a Personal Representative to administer the Decedent's Estate (except see SCPC 62-3-804(1)(b)).

Satisfaction or withdrawal of claim (FORM 325) **MUST** be filed once claim is resolved.

STATE OF SOUTH CAROLINA               )         IN THE PROBATE COURT
                                      )
COUNTY OF COLLETON                    )         CASE NO.: 2021 ES 15 347
                                      )
John T. Lay and Peter M. McCoy, as    )
Receivers for Richard Alexander Murdaugh's  )
Assets,                               )
                                      )         **COMPLAINT TO SET ASIDE**
          Plaintiffs,                 )         **FRAUDULENT CONVEYANCE**
                                      )         **AND TRANSFER**
v.                                    )
                                      )
                                      )
John Marvin Murdaugh, as Personal     )
Representative of the Estate of Margaret  )
Kennedy Branstetter Murdaugh,         )
          Defendant.                  )
_____ )
                                      )
                                      )

          COME NOW John T. Lay and Peter M. McCoy, as the court-appointed Receivers of the

assets of Richard Alexander Murdaugh, Sr. ("Alex Murdaugh") pursuant to the order dated

November 4, 2021 ("the Receivership Order") issued by the Circuit Court of South Carolina,

Fourteenth Judicial Circuit in the case captioned *Renee S. Beach, as Personal Representative of*

*the Estate of Mallory Beach v. Gregory M. Parker, et al.*, Civil Action No. 2019-CP-0111 and

pursuant to Rule 66 of the South Carolina Rules of Civil Procedure, file this Complaint to Set

Aside Fraudulent Conveyance and Transfer of  Real Property against Defendant John Marvin

Murdaugh, as Personal Representative of the Estate of Margaret Kennedy Branstetter Murdaugh,

and respectfully show the following:

          1.      Alex Murdaugh is a lawyer and was authorized to and did practice law in South

Carolina until September 8, 2021 when his license was suspended by the Supreme Court of the

South Carolina with his consent. Prior to this suspension, he had practiced law for many years with

1

the law firm Peters, Murdaugh, Parker, Eltzroth & Detrick, PA ("PMPED"). He primarily represented clients as plaintiffs in various civil litigation matters.

2.      Margaret Kennedy Branstetter Murdaugh ("Maggie Murdaugh") was Alex Murdaugh's wife. She was tragically killed on June 7, 2021. At the time of her death, Maggie was a citizen of the State of South Carolina.

3.      John Marvin Murdaugh is the duly appointed Personal Representative of the Estate of Margaret Kennedy Branstetter Murdaugh (the "Murdaugh Estate"). The Murdaugh Estate was opened on or about December 21, 2021 in Colleton County and is being administered before this Probate Court, *In the Matter of the Estate of Margaret Kennedy Branstetter Murdaugh*, Case No. 2012-ES-15-00347.

4.      This lawsuit concerns the fraudulent conveyance and transfer of multiple tracts of land that together form what is commonly known as "Moselle", located at 4147 Moselle Road, Islandton, South Carolina, by Alex Murdaugh to Maggie Murdaugh on December 20, 2016. Defendant John Marvin Murdaugh, on behalf of the Murdaugh Estate, currently has control, custody and possession of Moselle.

5.      Moselle totals approximately 1,772 acres and consists of multiple tracts of land, at least one of which is located, in part, in Hampton County and others located in Colleton County.

6.      Plaintiffs were appointed by the Court of Common Pleas, Fourteenth Judicial Circuit, to serve as the receivers for Alex Murdaugh's assets ("Alex Murdaugh Assets"), as well as certain assets of his son Richard Alexander Murdaugh, Jr. ("Buster Murdaugh Assets") (collectively, "the Subject Assets"), pursuant to the Court's Order dated November 4, 2021 in the case captioned *Renee S. Beach, as Personal Representative of the Estate of Mallory Beach*, Civil Action No. 2019-CP-25-00111 (the "Receivership Order").

2

7.     The Receivership Order confers broad authority on the Plaintiffs to do all things incidental, necessary and/or appropriate to recover, collect, preserve and receive all of the Subject Assets, including the authority to "institute, prosecute, compromise or defend civil suits and actions at law or equity related to any Alex Murdaugh Asset and/or to any Buster Murdaugh Asset in order to preserve such asset," to establish a receivership estate for current and future judgment creditors of Alex Murdaugh.

## Factual Allegations

8.     Moselle is comprised of multiple tracts of land acquired by Alex Murdaugh on or about April 15, 2013 and September 24, 2014, as further described below.

9.     On or about April 15, 2013, Alex Murdaugh acquired one hundred percent (100%) fee simple ownership of two (2) tracts of land, TMS# 123-00-00-002 (Colleton County) and TMS# 123-00-00-037 (Colleton County), which are constituent parts of Moselle, totaling approximately +/- 191.5 acres, from J.M. Boulware through a General Warranty Deed for $5.00 and the exchange of like-kind replacement property valued at $730,000.00.

10.     On or about April 15, 2013, Alex Murdaugh acquired one hundred percent (100%) fee simple ownership of four (4) tracts of land, TMS# 123-00-00-033 (Colleton County), TMS# 122-00-00-005 (Colleton County) and TMS# 146-00-00-003 (Hampton County), TMS# 122-00-00-008 (Colleton County), and TMS# 146-00-00-002 and TMS# 105-00-00-013, which are constituent parts of Moselle, totaling approximately +/- 462.1 acres, from J.M. Boulware through a General Warranty Deed for $499,646.00.

11.     On or about April 15, 2013, Alex Murdaugh acquired one hundred percent (100%) fee simple ownership of two (2) tracts of land, combined TMS# 122-00-00-009 (Colleton County),

3

which are constituent parts of Moselle, totaling approximately +/- 21.6 acres, from Barrett Boulware through a General Warranty Deed for $70,000.

12.    On or about May 1, 2013, J.M. Boulware executed a mortgage in favor of Alex Murdaugh in the amount of $970,354.00 securing eight (8) tracts of land owned by J.M. Boulware (TMS 122-00-00-003 and TMS 146-00-00-004) ("the Boulware Mortgage").

13.    On or about September 24, 2014, Alex Murdaugh acquired one hundred percent (100%) fee simple ownership of the eight (8) tracts of land that secured the Boulware Mortgage through a General Warranty Deed and Deed in Lieu of Foreclosure for $5.00 and a covenant not to sue to recover a personal judgment on the Boulware Mortgage. These eight (8) tracts are constituent parts of Moselle and total approximately +/-856 acres of Moselle's overall acreage.

14.    Moselle is located along the banks of the Salkehatchie River and, at all times pertinent to this lawsuit, contained merchantable timber, including varying forest types and age class distribution, including pine plantations, fallow fields and mature stands of pine/hardwood. In addition, Moselle has over 2.5 miles of river frontage and deer, turkey and waterfowl populations. In addition, various improvements existed on Moselle in 2016, including a residential home, a guest cottage, barn and other auxillary buildings.

15.    Moselle was listed for sale by Defendant John Marvin Murdaugh on behalf of Maggie's Estate in February 2022 for $3,900,000.00.

16.    On or about April 15, 2013, Alex Murdaugh took out a loan from Palmetto State Bank secured by a mortgage on approximately 914 acres of Moselle with a principal amount of $1,311,855.00 ("the First Mortgage").

17.    On or about February 15, 2015, Alex Murdaugh established a line of credit from Palmetto State Bank in the principal amount of $500,000 secured by a mortgage on the 856 acres

4

of Moselle he acquired fee simple title to on or about September 23, 2014; and, shortly thereafter, on or about May 13, 2015, Alex Murdaugh increased the principal amount of such line of credit from $500,000 to $1,000,000 ("the Line of Credit").

18.    As of December 20, 2016, Alex Murdaugh had paid down the balance on the First Mortgage to approximately $1,069,739.24.

19.    Alex Murdaugh's equity interest in Moselle as of December 20, 2016 was significant.

20.    On December 20, 2016, Alex Murdaugh purportedly sold and released his entire ownership interest in Moselle, which was wholly owned by him, to Maggie Murdaugh for and in consideration of the sum of five dollars ($5.00) and love and affection. A certified copy of the General Warranty Deed for this purported transfer, as recorded in Hampton County and a separate copy as recorded in Colleton County, is attached as Exhibit A hereto.

21.    There is no evidence that Maggie Murdaugh paid anything to Alex Murdaugh for receipt of her interest in Moselle. In fact, the opposite is true as Alex Murdaugh continued to provide monies to Maggie Murdaugh, as he had done throughout their marriage.

22.    However, at some point on or about 2011, or potentially earlier, Alex Murdaugh orchestrated, planned, participated in, directed and began to execute a complex financial scheme of indefinite duration to take, divert and otherwise deprive third persons of their money unlawfully for his personal benefit, the benefit of Maggie Murdaugh, potentially unknowingly by Maggie Murdaugh, and the benefit of others associated with the financial scheme.

23.    In furtherance of this financial scheme, Alex Murdaugh knowingly and unlawfully took several million dollars from multiple third persons, including but not limited to Natasha Thomas, the beneficiaries of the Estate of Hakeem Pinckney, Arthur Badger and Deon Martin and

5

potentially other clients whose identities may become known through the course of ongoing investigations, through a series of financial maneuvers dating back at least to 2011.

24.    Pursuant to indictments against Alex Murdaugh, on or about December 21, 2011, Alex Murdaugh willfully and unlawfully deprived his former client, Natasha Thomas, of $325,000.00 and converted such monies for his personal use.

25.    Pursuant to indictments against Alex Murdaugh, on or about December 21, 2011, Alex Murdaugh willfully and unlawfully deprived the Estate of Hakeem Pinckney of $309,581.46 and converted such monies for his personal use.

26.    Pursuant to indictments against Alex Murdaugh, on or about August 29, 2012, Alex Murdaugh willfully and unlawfully deprived his former client, Natasha Thomas, of $25,245.08 and converted such monies for his personal use.

27.    Pursuant to indictments against Alex Murdaugh, on or about February 11, 2013 and on or about June 25, 2014, Alex Murdaugh willfully and unlawfully deprived his former client, Arthur Badger, of approximately $1,325,000.00 and converted such monies for his personal use.

28.    Pursuant to indictments against Alex Murdaugh, on or about August 20, 2015, Alex Murdaugh fraudulently asserted that his former client, Deon Martin, had received an additional $500,000 in phantom funds in order to concordantly assert and retain improperly a legal fee of $200,000 from the settlement funds intended for Deon Martin.

29.    Pursuant to indictments against Alex Murdaugh, on or about October 7, 2015, Alex Murdaugh willfully and unlawfully deprived his former client, Deon Martin, of possession of $338,056.14 and converted such monies for his personal use.

30.    Upon information, in 2015 or earlier, Alex Murdaugh opened one or more bank accounts at Bank of America in his own name doing business as (d/b/a) "Forge" where he

deposited monies derived directly and indirectly from monies he misappropriated from various third persons.

31.     Pursuant to indictments against Alex Murdaugh, on or about October 11, 2016, Alex Murdaugh willfully and unlawfully deprived his former client, Deon Martin, of $45,000.00 and converted such monies for his personal use.

32.     The total amount of money Alex Murdaugh willfully and unlawfully deprived Natasha Thomas, the Estate of Hakeem Pinckney, Arthur Badger and Deon Martin of totals at least $2,567,882.68 without prejudgment interest or punitive damages applied.

33.     In addition, Plaintiffs are informed and believe that Alex Murdaugh willfully and unlawfully converted and otherwise took further amounts of money from multiple other persons prior to December 20, 2016 in furtherance of the on-going unlawful financial scheme.

34.     Upon information and belief, Alex Murdaugh made payments on the First Mortgage and the Line of Credit to the issuing bank using money he willfully and unlawfully converted and otherwise took from third persons prior to December 20, 2016 when he purportedly conveyed Moselle to Maggie Murdaugh.

35.     As of December 20, 2016, Alex Murdaugh knew he was actually indebted to the various persons known to him from whom he had taken money. Further, Alex Murdaugh knew or should have known that such persons had existing civil claims against him for the amount of money he had consciously and unlawfully taken and damages and penalties associated with such existing tort claims (such persons, "Existing Claimholders").

36.     Further, as of December 20, 2016, Alex Murdaugh intended to continue and was actively continuing to execute the financial scheme that he formulated and began to execute in 2011 (or earlier date) to defraud and unlawfully take money from third persons in the future.

7

Having no intention of stopping his unlawful conduct in furtherance of the scheme, Alex Murdaugh knew he would become indebted to additional persons in the future on account of his financial misconduct and otherwise ("Subsequent Claimholders").

37.    Upon information and belief, as of December 20, 2016, despite his significant equity interest in Moselle, Alex Murdaugh had other outstanding debts, notes and mortgages owed to third parties which, taken together with the money he unlawfully took from the Existing Claimholders, exceeded his gross assets and, thus, was effectively insolvent.

38.    Therefore, with a view to future indebtedness and with the conscious intent of delaying, hindering, defrauding, evading and/or placing Moselle out of the reach of Existing Claimholders and Subsequent Claimholders to avoid potential judgment, Alex Murdaugh transferred his fee simple interest in Moselle to Maggie Murdaugh for "$5.00 and Love and Affection."

39.    Given Alex Murdaugh's equity in Moselle and other pertinent factors, Alex Murdaugh's purported transfer of Moselle to Maggie Murdaugh on December 20, 2016 for $5.00 (assuming the $5.00 was actually paid) and love and affection was, as a matter of South Carolina law, equivalent to a transfer without consideration.

40.    Following the transfer on December 20, 2016, Alex Murdaugh continued to hold himself out as the owner of Moselle by:

> a.    continuing to make payments on the First Mortgage, as he had before the transfer, with money from his personal bank accounts, including with money that was improperly obtained from Existing Claimholders and Subsequent Claimholders, to pay down the balance as of December 20, 2016 of $1,069,739.24 down to $806,666.26 as of November 4, 2021, with $13,654.36 of principal being

8

further advanced on this loan by Palmetto State Bank on November 5, 2021 after Maggie had died and after the Circuit Court entered the Receivership Order and associated injunction;

b.    continuing to make periodic payments towards the Line of Credit, as he had done before the transfer, from his personal bank accounts with money that was improperly obtained from Existing Claimholders and Subsequent Claimholders, including a payment of $200,000.00 on December 29, 2016 and a payment of $459,157.55 on October 25, 2019;

c.    restructuring, extending and/or renewing the First Mortgage after his purported conveyance of Moselle to Maggie Murdaugh, such that Alex Murdaugh remained as the named debtor and beneficiary of the First Mortgage, to the exclusion of Maggie Murdaugh, on the restructured, extended and/or renewed loan;

d.    restructuring, extending and/or renewing the Line of Credit after his purported conveyance of Moselle to Maggie Murdaugh, such that Alex Murdaugh remained as the named debtor and beneficiary of the Line of Credit, to the exclusion of Maggie Murdaugh, on the restructured, extended and/or renewed Line of Credit;

e.    continuing to draw additional funds from the Line of Credit for his own benefit after making payments on the same following the purported conveyance of Moselle to Maggie Murdaugh, with such additional funds having been spent by him;

f.    taking out one or more homeowners' insurance policies on Moselle where he was listed as the named insured;

9

g. continuing to maintain and operate a bank account in his name only, and not jointly in Maggie Murdaugh's name, referred to as the "Farm Account" (Acct # XXXXX646) which he purportedly used to pay for expenses related to Moselle and its maintenance and operations;

h. continuing to execute documents related to the First Mortgage and the Line of Credit and request extensions to pay such debts; and

i. and doing such other things consistent with ownership as may be discovered during the course of this litigation.

41. Due to his gratuitous transfer of Moselle to his wife and continued payment of debts and expenses associated with Moselle, Alex Murdaugh's assets were significantly diminished, and he did not reserve a sufficient amount of assets to pay Existing Claimholders and Subsequent Claimholders.

42. Despite this, from December 20, 2016 until October 2021 when he was incarcerated by the State of South Carolina, Alex Murdaugh continued to enjoy the benefits of ownership of Moselle by continuing, as he had before, to:

a. possess and control Moselle;

b. make decisions as to the maintenance of Moselle's land, residence, accessory buildings and fixtures;

c. reside and/or stay overnight at Moselle;

d. pledge Moselle as collateral for various loans for which he was the beneficiary;

e. use and enjoy Moselle for hunting and other recreational purposes;

f. receive the benefits of any rents and/or profits from Moselle;

10

g.     receive monies advanced from the Line of Credit and/or other loans secured, in whole or in part, by Moselle for his personal and discretionary use; and

h.     receive such other benefits from or on account of Moselle as may be discovered during the course of this litigation.

### *For a First Cause of Action*
### Fraudulent Conveyance (Existing Claimholders)

43.    Plaintiff hereby incorporates and restates the facts alleged in Paragraphs 1 through 42 above.

44.    As to Existing Claimholders to whom Alex Murdaugh was indebted at the time of his transfer of Moselle to Maggie Murdaugh on December 20, 2016, this constitutes a fraudulent transfer under South Carolina common law, S.C. Code Ann. § 27-23-10 and the Uniform Fraudulent Transfers Act because:

a.    Alex Murdaugh was indebted to the Existing Claimholders at the time of the December 20, 2016 transfer to Maggie Murdaugh; and

b.    (i) the transfer was without consideration; and (ii) Alex Murdaugh failed to retain sufficient property to pay the indebtedness to the Existing Claimholders in full; or, *alternatively,*

c.    (i) the transfer was made by Alex Murdaugh with the actual intent of defrauding his creditors; and (ii) Alex Murdaugh's intent is imputable to Maggie Murdaugh.

45.    Therefore, Alex Murdaugh's transfer of Moselle to Maggie Murdaugh constitutes a fraudulent conveyance which must be set aside and deemed void and of no effect pursuant to S.C. Code Ann. § 27-23-10, South Carolina common law and principles of equity and Defendant

11

John Marvin Murdaugh is required to relinquish custody and possession of Moselle to Plaintiffs in accordance with the Receivership Order.

### *For a Second Cause of Action*
### Fraudulent Conveyance of Real Property (Subsequent Claimholders)

46.    Plaintiff hereby incorporates and restates the facts alleged in Paragraphs 1 through 42 above.

47.    As to Subsequent Claimholders, Alex Murdaugh's transfer of his interest in Moselle to Maggie Murdaugh constitutes a fraudulent transfer under South Carolina common law, S.C. Code Ann. § 27-23-10 and the Uniform Fraudulent Transfers Act because it was:

> a.    the transfer was without consideration; and
>
> b.    it was made with a view to future indebtedness or with an actual fraudulent intent on the part of Alex Murdaugh to defraud creditors.

48.    Therefore, Alex Murdaugh's transfer of Moselle to Maggie Murdaugh constitutes a fraudulent conveyance which must be set aside and deemed void and of no effect pursuant to S.C. Code Ann. § 27-23-10, South Carolina common law and principles of equity and Defendant John Marvin Murdaugh shall relinquish custody and possession of Moselle to Plaintiffs in accordance with the Receivership Order.

### Prayer for Relief

WHEREFORE, Plaintiffs respectfully ask this Court to enter judgment that Alex Murdaugh's transfer of Moselle to Maggie Murdaugh constitutes a fraudulent conveyance which shall be set aside and deemed void and of no effect pursuant to S.C. Code Ann. § 27-23-10, South Carolina common law and principles of equity and that Defendant John Marvin Murdaugh relinquish custody and possession of Moselle to Plaintiffs in accordance with the Receivership Order.

12

**Gallivan, White & Boyd, P.A.**

By: _____

Amy L.B. Hill, SC Bar No. 68541
Jordan Crapps, SC Bar No. 100580
Kate C. Mettler, SC Bar No. 103762
P.O. Box 7368
Columbia, SC 29202
(803) 779-1833
ahill@gwblawfirm.com; jcrapps@gwblawfirm.com
kmettler@gwblawfirm.com
*Counsel to the Receivers John T. Lay, Jr. and Peter M. McCoy*

June 6, 2022

13

ELECTRONICALLY FILED - 2023 Jan 10 3:26 PM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS
                                         ) FOURTEENTH JUDICIAL CIRCUIT
COUNTY OF HAMPTON )
                                         ) CASE NO.: 2019-CP-25-00111
Renee S. Beach, as Personal Representative )
of the Estate of Mallory Beach, )
                                         )
         Plaintiff, )
                                         ) **JOINT MOTION FOR COURT**
v. ) **CONSIDERATION AND APPROVAL**
                                         ) **OF SETTLEMENT AGREEMENT**
                                         )
Gregory M. Parker, Inc. d/b/a Parker's )
Corporation Richard Alexander Murdaugh, )
and Richard Alexander Murdaugh, Jr., )
                                         )
         Defendants. )
_____ )

         Plaintiff Renee Beach, as Personal Representative of the Estate of Mallory Beach, along with Peter M. McCoy, Jr. and John T. Lay, Jr. ( hereinafter "Co-Receivers") Richard Alexander Murdaugh, Jr., and John Marvin Murdaugh, as Personal Representative of the Estate of Margaret Kennedy Branstetter Murdaugh hereby move the Court for consideration and approval of a proposed Settlement Agreement reached after considerable negotiations between the parties to the agreement (attached hereto as Exhibit 1 and hereinafter the "Agreement").

## BACKGROUND

         On or about December 20, 2016, Richard Alexander Murdaugh ("Alex Murdaugh") conveyed his ownership of the 1,772 acre property commonly referred to as Moselle to Margaret Kennedy Branstetter Murdaugh (hereafter, "Maggie Murdaugh"). On June 7, 2021, Maggie Murdaugh lost her life. The circumstances of her death are the subject of murder charges currently pending against Alex Murdaugh. As a result of the 2016 transfer and her death, Moselle became an asset of the Estate of Maggie Murdaugh (hereinafter, the "Estate").

1

ELECTRONICALLY FILED - 2023 Jan 10 3:26 PM - HAMPTON - COMMON PLEAS - CASE#2019CP250011

Currently, the sole heir to the Estate is Alex Murdaugh and the largest asset of the Estate is Moselle.

On or about November 4, 2021, this Court issued an order appointing the Co-Receivers over all assets of Alex Murdaugh and certain assets of Richard Alexander Murdaugh, Jr., a/k/a Buster Murdaugh – his and Maggie Murdaugh's son – and enjoined the transfer and encumbrance of any of Alex Murdaugh's assets. Thereafter, the Co-Receivers took the following actions in regard to Alex Murdaugh's interest in the Estate and in Moselle:

(1) On March 9, 2022, the Co-Receivers challenged and sought to void the Qualified Disclaimer executed by Alex Murdaugh and filed on March 7, 2022 which sought to disclaim any and all rights and interest he has in the Estate. The Qualified Disclaimer would have resulted in Alex Murdaugh being treated as having predeceased his wife for purposes of construing her Will and, therefore, the sole devisee of the Estate would have been Buster Murdaugh. The Co-Receiver's motion was granted, and Alex Murdaugh's attempted disclaimer was voided. This decision has not yet been appealed.

(2) On July 6, 2022, the Co-Receivers filed an action in the Probate Court for Colleton County against the Estate seeking to set aside the transfer of Moselle as fraudulently conveyed (hereinafter the "Fraudulent Conveyance Claim"). If the Co-Receivers prevail in this action, Moselle would no longer be an asset of the Estate but rather an asset of Alex Murdaugh's and subject to the Co-Receiver's control. The Fraudulent Conveyance Claim is contested by the Estate. That action is currently pending and its resolution is the subject of the proposed Settlement Agreement.

ELECTRONICALLY FILED - 2023 Jan 10 3:26 PM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

In addition to the above referenced actions, Alex Murdaugh is scheduled to stand trial for the murder of Maggie Murdaugh beginning January, 2023. If Alex Murdaugh is found guilty of murdering Maggie Murdaugh, under South Carolina law, he would be treated as having predeceased his wife for purposes of construing her Will and the sole devisee would, again, be Buster Murdaugh.

Meanwhile, Maggie Murdaugh's Estate and/or the assets therein,  Alex Murdaugh and Buster Murdaugh are the subject of substantial other litigation arising out of or related to a February 24, 2019, boat crash including the following:

A. Renee Beach, as Personal Representative of the Estate of Mallory Beach v. Gregory Parker Inc., et al., including Richard Alexander Murdaugh, Jr. and the Estate of Margaret Kennedy Branstetter Murdaugh (2019-CP-25-00111);

B. Morgan Doughty v. Gregory Parker, Inc., et al.,  including Richard Alexander Murdaugh, Jr. and the Estate of Margaret Kennedy Branstetter Murdaugh (2022-CP-25-00037); and

C. Miley Altman v. Gregory Parker, Inc., et al.,  including Richard Alexander Murdaugh, Jr. and the Estate of Margaret Kennedy Branstetter Murdaugh (2022-CP-25-00036)

(collectively, the "Boat Crash Litigation").

Additionally, the plaintiffs in the Boat Crash Litigation have filed claims in the Probate Court against the Estate.  To date, counsel for the Estate have incurred approximately $290,000.00 in attorneys' fees and have yet to conduct formal discovery or litigate the Fraudulent Conveyance Claim.  All parties expect the litigation of the Fraudulent Conveyance Claim to result in substantial additional legal fees and costs which would reduce the amount recoverable through continued litigation of the claim.

ELECTRONICALLY FILED - 2023 Jan 10 3:26 PM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

The undersigned as Counsel for the Boat Crash Litigation plaintiffs, the Co-Receivers and their counsel, John Marvin Murdaugh and counsel for the Estate, and Buster Murdaugh and his counsel, met on January 5, 2023, after months of negotiations, a failed mediation and a prior hearing with the Probate Court, to resolve all claims against the Estate and its assets. The resulting Settlement Agreement is attached hereto as Exhibit 1.

## THE SETTLEMENT AGREEMENT

Plaintiff Renee Beach, as Personal Representative of the Estate of Mallory Beach, along with  the Co-Receivers, Richard Alexander Murdaugh, Jr., and John Marvin Murdaugh, as Personal Representative of the Estate recommend approval of this Settlement Agreement. Pursuant to the terms of the Settlement Agreement, the Receivership will receive $275,000 "in settlement of the Fraudulent Conveyance Claim and to be held in the common fund under the custody and control of the Co-Receivers." However, because of the gordian knot of varying claims and interests, including that of the Co-Receivers, a resolution of the Co-Receivers' claims against the Estate could not be resolved without the participation and inclusion of other interested parties. Therefore, the Settlement Agreement resolves several claims against the Estate which are outside the purview of the Receivership.

As a result of this negotiated settlement of the varying claims against the Estate's assets, the balance of the Estate certainly does not accrue to the benefit of Alex Murdaugh and largely does not accrue to the benefit of his family other than to the extent he may receive a set-off in the future from the amounts that will ultimately be paid to the plaintiffs in the Boat Crash Litigation. Importantly, John Marvin Murdaugh, as personal representative of the Estate, has agreed to waive his right to a personal representative fee in a good faith effort to help resolve the web of

ELECTRONICALLY FILED - 2023 Jan 10 3:26 PM - HAMPTON - COMMON PLEAS - CASE#2019CP250011

issues involving the Estate and its assets. Accordingly, the Estate's funds will be distributed under the Settlement Agreement to other claimants as follows:

(1) The Estate's legal fees and expenses in the amount of approximately $290,000;

(2) $6,511.52 to Laura Jones, LLC, who also filed a claim against the Estate in the Probate Court, in satisfaction of her creditor claim against the Estate;

(3) $12,305.28 to John Marvin Murdaugh for personal funds advanced on behalf of the Estate and in satisfaction of his outstanding creditor claim against the Estate;

(4) $100,000 to Joseph McCulloch, Esquire as counsel for Connor Cook to release his claim against Buster Murdaugh in Connor Cook v. Gregory Parker, Inc., aka Parker's Corporation d/b/a Parkers 55, Tajeeha Cohen, Richard Alexander Murdaugh and Richard Alexander Murdaugh, Jr. (2021-CP-25-00303).;

(5) $530,000 to Buster Murdaugh as devisee of the Estate;

(6) $275,000 to the Co-Receivers; and

(7) The balance[1] to Mark Tinsley, Esquire on behalf of Renee Beach as Personal Representative for the Estate of Mallory Beach, Morgan Doughty, and Miley Altman, respectively.

The consideration and satisfaction or partial satisfaction of these other claims in resolving the Co-Receivers' disputed claims against the same pool of Estate assets is consistent with the Co-Receivers obligations and duties pursuant to the Order appointing them. The Co-Receivers have determined that the Settlement Agreement is reasonable and in the best interests of the Receivership as a whole. The ultimate resolution of these claims and costs to the Estate of defending the same would reduce the ultimate value of the Estate to its beneficiaries whether that

---

[1] The Settlement Agreement is also contingent upon the resolution of creditor claims by Palmetto State Bank for an amount no greater than $25,000. The balance of the Estate will be further decreased by the amount of any such resolution if reached.

ELECTRONICALLY FILED - 2023 Jan 10 3:26 PM - HAMPTON - COMMON PLEAS - CASE#2019CP250011

ultimately be Alex Murdaugh or Buster Murdaugh. The resolution of the claims against the Estate - including the Fraudulent Conveyance Claim - preserves the value of the Estate. Further, this settlement maximizes the Estate assets to the best extent practicable for the benefit of the unliquidated claimants against the Estate by avoiding the uncertainty of protracted litigation.

Alex Murdaugh's status as the beneficiary of the Estate and the Co-Receivers' ability to access funds associated with the sale of Moselle was subject to  substantial risk. First, Alex Murdaugh's status as sole beneficiary of the Estate was contingent. Alex Murdaugh attempted to disclaim his interest on March 7, 2022. While that disclaimer was declared void by Order of this Court dated June 7, 2022, that decision is subject to appeal. Resolving this issue now reduces the costs and months of time that would necessarily be devoted to the trial of the Fraudulent Conveyance Claim, as well as any such appeal that could follow either this Court's order of June 7, 2022, or the trial of the Fraudulent Conveyance Claim itself and eliminates any risk that the Qualified Disclaimer would be allowed against the argument of the Co-Receivers.[2] Additionally, South Carolina's slayer statute would prevent Alex Murdaugh from inheriting from the Estate to the extent he is found guilty of murdering Maggie Murdaugh. That trial is scheduled to begin to January 23, 2023. If either the disclaimer is allowed or Alex Murdaugh is found guilty of murder, his status as beneficiary of the Estate would be eliminated. As a result, Alex Murdaugh's ultimate ability to remain sole beneficiary is the subject of legitimate question.

If Alex Murdaugh's status as beneficiary was voided by operation of the disclaimer or the slayer statute, the only other avenue for collection by the Co-Receivers against the Estate of Moselle was through the Fraudulent Conveyance Claim against the Estate. While the  Fraudulent Conveyance Claim has its merits and strengths, it is certainly not without potential risks. More

---

[2] Mechanically, the Settlement Agreement contemplates that Alex Murdaugh be permitted to disclaim his interest in the Estate and the Order voiding that disclaimer be withdrawn. For purposes of effectuating this Settlement Agreement only, the Co-Receivers consent to Alex Murdaugh disclaiming his interest in the Estate.

ELECTRONICALLY FILED - 2023 Jan 10 3:26 PM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

importantly, the litigation of the Fraudulent Conveyance Claim not only carries substantial litigation risks of costs, time, appeals, and potential for a negative result, the Co-Receivers' standing to bring the action to begin with is also under attack.

As it relates to the Receivership, the Settlement Agreement resolves the Co-Receiver's Fraudulent Conveyance Claim for $275,000. However, the benefits are not so limited.  The Settlement Agreement benefits the Receivership by also (1) eliminating significant costs of complex litigation and any resulting appeals by beneficially resolving with finality Alex Murdaugh's disclaimer of interest and the Co-Receivers' Fraudulent Conveyance Claim , (2) permitting the sale of Moselle during current market conditions which, as detailed below, allows the Receivers to receive additional funds, (3) substantially reducing actual and potential claims against the Receivership's funds by partially satisfying claims made by other parties including but not limited to the Plaintiff in the above captioned action, and (4) eliminating the risk associated with Alex Murdaugh's murder trial and its impact on his status as beneficiary of Maggie Murdaugh's Estate. Additionally, notice of this Settlement Agreement is being provided to Estate creditors to allow any objection to be heard.  The Settlement Agreement is subject to Probate Court Approval. This Motion is also being provided to persons upon information and belief who are making a claim or could be making a claim against Alex Murdaugh and/or the Receivership Fund.  Based on the above, the Plaintiff and Co-Receivers respectfully request this Court approve the Settlement Agreement, dismiss Richard Alexander Murdaugh, Jr. from this action with prejudice and relieve him personally from the Receivership and injunction as it relates to him, dismiss John Marvin Murdaugh, as Personal Representative of the Estate of Margaret Kennedy Branstetter Murdaugh from this action, and give the Plaintiff leave to amend her complaint to reflect these dismissals.

**MOSELLE**

As detailed in its prior Motion for the Approval of a Settlement with Palmetto State Bank, the Co-Receivers will receive sums related to the sale of Moselle in addition to the $275,000 described above. Specifically, as part of satisfaction of the mortgage, the Co-Receivers are entitled to direct collection of all interest and fees outstanding on the two loans associated with the Moselle property. Approving the settlement agreement and permitting the sale of Moselle will free these sums for the Receivership as well.

**CONCLUSION**

For the reasons described herein, the Co-Receivers ask that the Court approve the Settlement Agreement attached hereto as Exhibit 1 and authorize the Co-Receivers to execute such agreements as are necessary to effectuate the same.

> **MARK B. TINSLEY, ATTORNEY FOR THE ESTATE OF MALLORY BEACH**
>
> **s/Mark B. Tinsley**
> Gooding and Gooding, P.A.
> P. O. Box 1000
> Allendale, SC 29810
>
> **CO-RECEIVERS JOHN T. LAY, JR., PETER M. McCOY, JR., AND THEIR ATTORNEY, AMY L. B. HILL**
>
> **s/John T. Lay, Jr.**
> Gallivan White & Boyd, P.A.
> 1201 Main Street, Suite 1200
> Columbia, SC 29201
>
> **s/Peter M. McCoy, Jr.**
> McCoy Law Group, LLC
> 15 Prioleau Street
> Charleston, SC 29401

ELECTRONICALLY FILED - 2023 Jan 10 3:26 PM - HAMPTON - COMMON PLEAS - CASE#2019CP250011

ELECTRONICALLY FILED - 2023 Jan 10 3:26 PM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

**s/Amy L. B. Hill**

Richardson, Thomas, Haltiwanger, Moore & Lewis
1513 Hampton Street
Columbia, SC 29201


**ADAM N, YOUNT AND E. ELLIOTT
CONDON, ATTORNEYS FOR BUSTER
MURDAUGH**

**s/Adam N. Yount**

Haynsworth Sinkler Boyd, PA
PO Box 340
Charleston, SC 29402-0340

**s/E. Elliott Condon**

Haynsworth Sinkler Boyd, PA
134 Meeting Street, 3Rd Floor
Charleston, SC 29401


**WILLIAM GEORGE NEWSOME, III,
ATTORNEY FOR THE ESTATE OF MAGGIE
MURDAUGH AND JOHN MARVIN
MURDAUGH**

**s/William George Newsome, III**

Newsom Law, P.A.
1501 Main Street, Suite 601
Columbia, SC 29201

**EXHIBIT 1**

ELECTRONICALLY FILED - 2023 Jan 10 3:26 PM - HAMPTON - COMMON PLEAS - CASE#2019CP250011

## SETTLEMENT AGREEMENT

WHEREAS, on the early morning of February 24, 2019, a boating crash occurred, which resulted in the death of Mallory Beach, and injuries to some of the other passengers in the boat; and

WHEREAS, as a result of the boating crash, the following lawsuits, among others, have been filed in the Court of Common Pleas in Hampton County, South Carolina:

- A. Renee Beach, as Personal Representative of the Estate of Mallory Beach v. Gregory Parker Inc. including Richard Alexander Murdaugh, Jr. and the Estate of Margaret Kennedy Branstetter Murdaugh (2022-CP-25-00111),

- B. Morgan Doughty v. Gregory Parker, Inc., including Richard Alexander Murdaugh, Jr. and the Estate of Margaret Kennedy Branstetter Murdaugh (2022-CP-25-00037),

- C. Miley Altman v. Gregory Parker, Inc., including Richard Alexander Murdaugh, Jr. and the Estate of Margaret Kennedy Branstetter Murdaugh (2022-CP-25-00036),

- D. Connor Cook v. Gregory Parker, Inc., aka Parker's Corporation d/b/a Parkers 55, Tajeeha Cohen, Richard Alexander Murdaugh and Richard Alexander Murdaugh, Jr. (2021-CP-25-00303); and,

WHEREAS, on June 7, 2021, Margaret Kennedy Branstetter Murdaugh and Paul Terry Murdaugh lost their lives; and,

WHEREAS, on November 4, 2021, the Honorable Daniel D. Hall, Circuit Judge, issued an order appointing John T. Lay, Jr., Esquire and Peter M. McCoy, Jr., Esquire as Co-Receivers over any assets of Richard Alexander Murdaugh and Richard Alexander Murdaugh, Jr. (the "Co-Receivers") and issued an injunction barring Richard Alexander Murdaugh from transferring or encumbering any of his assets; and,

1

ELECTRONICALLY FILED - 2023 Jan 10 3:26 PM - HAMPTON - COMMON PLEAS - CASE#2019CP250011

WHEREAS, on August 15, 2005, Margaret Kennedy Branstetter Murdaugh executed her Last Will and Testament, which provided that upon her death her property, both real and personal, was devised to her husband, Richard Alexander Murdaugh. The Will further provided that if she were predeceased by Richard Alexander Murdaugh, all her property was left to her two sons, Richard Alexander Murdaugh, Jr. and Paul Terry Murdaugh; and,

WHEREAS, on December 21, 2021, the estate of Margaret Kennedy Branstetter Murdaugh (the "Estate") was opened in the Probate Court of Colleton County (Case No. 2021-ES-15-00347) and later assigned to Georgetown County Probate Judge Leigh Powers Boan (Case No: 2022-ES-15-00397); and,

WHEREAS, John Marvin Murdaugh (the "Personal Representative") is the duly-appointed personal representative of the Estate; and,

WHEREAS, Renee Beach, as Personal Representative of the Estate of Mallory Beach, Morgan Doughty and Miley Altman have filed claims against the Estate of Margaret Kennedy Branstetter Murdaugh arising from their losses, injuries and claims associated with their respective lawsuits; and

WHEREAS, on or about December 20, 2016, Richard Alexander Murdaugh transferred, sold and released his ownership in approximately 1,772 acres of land, located in Hampton and Colleton Counties ("Moselle Property") to Margaret Kennedy Branstetter Murdaugh; and,

WHEREAS, on or about March 7, 2022, Richard Alexander Murdaugh, Sr. executed a Qualified Disclaimer as to any and all of his rights and interest in the Estate; and,

WHEREAS, on or about March 9, 2022, the Co-Receivers filed a motion seeking to void Richard Alexander Murdaugh's Qualified Disclaimer due to the injunction by Judge Hall; and,



2

ELECTRONICALLY FILED - 2023 Jan 10 3:26 PM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

WHEREAS, if Richard Alexander Murdaugh, Sr.'s Qualified Disclaimer is effective, he would be treated as having predeceased his wife for purposes of construing her Last Will & Testament and her sole devisee would be her son Richard Alexander Murdaugh, Jr.;

WHEREAS, Richard Alexander Murdaugh, Sr. is scheduled to stand trial for the murder of his wife Margaret Kennedy Branstetter Murdaugh; and

WHEREAS, pursuant to S.C. Code section 62-2-803, if Richard Alexander Murdaugh, Sr. is found guilty of murdering Margaret Kennedy Branstetter Murdaugh, he would be treated as having predeceased his wife for purposes of construing her Last Will & Testament and her sole devisee would be her son Richard Alexander Murdaugh, Jr., which is the same legal result as the Qualified Disclaimer; and

WHEREAS, John Marvin Murdaugh, as Personal Representative of the Estate has incurred costs and attorney fees in the administration of the Estate for which he and his attorneys have petitioned the Probate Court to allow to be paid from the Estate's assets; and

WHEREAS, Renee Beach, as Personal Representative of the Estate of Mallory Beach, Morgan Doughty and Miley Altman have filed certain objections to the petitions to allow payment of attorneys' fees and costs; and

WHEREAS, on or about, July 6, 2022, the Co-Receivers filed an action in the Probate Court for Colleton County seeking to set aside the transfer of the Moselle Property from Richard Alexander Murdaugh, Sr. to Margaret Kennedy Branstetter Murdaugh (hereinafter the "Fraudulent Conveyance Claim"); and

WHEREAS, little to no formal discovery has been conducted in the Fraudulent Conveyance Claim but will be hotly contested and therefore there will be substantial additional legal fees and expenses to prosecute that case to conclusion; and



3

ELECTRONICALLY FILED - 2023 Jan 10 3:26 PM - HAMPTON - COMMON PLEAS - CASE#2019CP250011

WHEREAS, the plaintiffs, in the following lawsuits and their attorneys; the Co-Receivers and their attorneys; the Personal Representative and his attorneys; and Richard Alexander Murdaugh, Jr. and his attorneys (all set forth below and collectively "the Parties"); agree that it is in the best interests of all involved to avoid the costs of protracted litigation and to preserve the available assets to the best extent possible.

| Attorney | Client(s) | Matter |
| --- | --- | --- |
| Mark B. Tinsley | Renee Beach, as Personal Representative of Mallory Beach | Renee Beach, as Personal Representative of the Estate of Mallory Beach v. Gregory Parker Inc., et al<br><br>(2022-CP-25-00111) |
| | Morgan Doughty | Morgan Doughty v. Gregory Parker, Inc., et al<br><br>(2022-CP-25-00037) |
| | Miley Altman | Miley Altman v. Gregory Parker, Inc., et al<br><br>(2022-CP-25-00036) |
| Joseph M. McCulloch | Connor Cook | Connor Cook v. Gregory Parker, Inc., aka Parker's Corporation d/b/a Parkers 55, Tajeeha Cohen, Richard Alexander Murdaugh and Richard Alexander Murdaugh, Jr.<br><br>(2021-CP-25-00303) |
| Amy L. B. Hill | John T. Lay, Receiver | Renee Beach, as Personal Representative of the Estate of Mallory Beach v. Gregory Parker Inc., et al<br><br>(2022-CP-25-00111) |
| | Peter McCoy, Receiver | |
| William A. Coates<br><br>William G. Newsome III | John M. Murdaugh, as Personal Representative of Margaret Kennedy Branstetter Murdaugh | Renee Beach, as Personal Representative of the Estate of Mallory Beach v. Gregory Parker Inc.<br><br>(2022-CP-25-00111) |



4

ELECTRONICALLY FILED - 2023 Jan 10 3:26 PM - HAMPTON - COMMON PLEAS - CASE#2019CP250011

| Everette W. Bennett, Jr. | | Morgan Doughty v. Gregory Parker, Inc., et al<br><br>(2022-CP-25-00037) |
| | | Miley Altman v. Gregory Parker, Inc., et al<br><br>(2022-CP-25-00036) |
| | | |
| Adam N. Yount<br><br>E. Elliot Condon | Richard Alexander Murdaugh, Jr. | Renee Beach, as Personal Representative of the Estate of Mallory Beach v. Gregory Parker Inc.<br><br>(2022-CP-25-00111) |
| | | Morgan Doughty v. Gregory Parker, Inc., et al<br><br>(2022-CP-25-00037) |
| | | Miley Altman v. Gregory Parker, Inc., et al<br><br>(2022-CP-25-00036) |
| | | Connor Cook v. Gregory Parker, Inc., aka Parker's Corporation d/b/a Parkers 55, Tajeeha Cohen, Richard Alexander Murdaugh and Richard Alexander Murdaugh, Jr.<br><br>(2021-CP-25-00303) |

NOW, THEREFORE, the Parties desire to enter into this Agreement for the purpose of resolving

any and all disputes among them, without any admission of liability on the part of any of the

Parties. After full disclosure, the Parties hereby agree as follows:

A. This Settlement Agreement (this "Agreement") is intended by the Parties to qualify both

   as a private agreement among successors pursuant to S.C. Code section 62-3-912 and as a

   judicially approved compromise pursuant to S.C. Code section 62-3-1101 and -1102.

   This Agreement will be submitted by the Parties for court approval by both the

   Honorable Daniel D. Hall in the circuit court cases and the Honorable Leigh Powers

5

Boan in the probate court cases and this Agreement is contingent upon court approval in both circuit court and probate court. The Personal Representative recommends court approval as being in the best interests of the Estate and its successors and will sign the Agreement if approved by Judge Boan. The Personal Representative may be entitled to a statutory Personal Representative's commission but is willing to waive his commission in the spirit of compromise and to help the matter settle.

B. The Co-Receivers recommend approval as being in the best interests of preserving the assets of Richard Alexander Murdaugh, Sr. and Richard Alexander Murdaugh, Jr. to the best extent practical given all of the competing interests and will sign the Agreement if approved by Judge Hall.

C. The motion and any order to set aside Richard Alexander Murdaugh Sr.'s Qualified Disclaimer pursuant to the will of Margaret Kennedy Branstetter Murdaugh will be withdrawn (subject to approval by Judge Hall), and Richard Alexander Murdaugh, Sr. will be treated as if he predeceased Margaret Kennedy Branstetter Murdaugh for purposes of the interpretation of her Last Will and Testament, and the distribution of her estate to Richard Alexander Murdaugh, Jr. as sole devisee, in accordance with the disclaimer and the possible application of S.C. Code section 62-2-803.

D. This Agreement is contingent upon Richard Alexander Murdaugh, Sr. waiving any appeal right to the order appointing the Co-Receivers.

E. The Personal Representative shall sell the Moselle Property pursuant to the terms of the currently existing contract and the Order of the Honorable Leigh Powers Boan dated December 13, 2022, as soon as practicable, and deposit the net sales proceeds in the Estate bank account. All parties agree to cooperate in signing any necessary documents required to effectuate the sale of the Moselle Property, if any, as soon as possible after the

6

ELECTRONICALLY FILED - 2023 Jan 10 3:26 PM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

requisite court approvals of this Agreement. To the extent the sale of the Moselle Property occurs before the requisite court approvals of this Agreement, the Parties agree to direct the escrow agent to transfer the net sales proceeds from the Moselle Property to the Personal Representative to be deposited in the Estate bank account.

F. The Personal Representative shall proceed expeditiously with selling the remaining Estate furniture and other personal property of the Estate through Liberty Auction and deposit the net proceeds in the Estate bank account and give any requested accounting of the same to any party to this Agreement if requested.

G. The Personal Representative warrants and represents that to the best of his knowledge, after the sale of the Moselle Property and the furniture, the only Estate assets that will not be converted to cash held in the Estate bank account will be the Mercedes vehicle (described below) and intangible rights, such as name, image and likeness, publishing rights and choses in action.

H. The Personal Representative shall sign and deliver the title to the 2021 Mercedes, Model No. GLS450W4, VIN No. 4JGFF5KEIMA378564 (the "Mercedes") to Mark B. Tinsley, Esquire to hold in trust until the vehicle is released by the Office of the South Carolina Attorney General's Office. Attorney Tinsley is authorized to take delivery of the Mercedes and to sell it on such terms as he deems reasonable and to deposit the net sales proceeds into his trust account for disbursement to his clients in accordance with the terms set forth below.

I. The Estate bank account shall be distributed as follows:

1. The Personal Representative will pay the Estate's outstanding legal fees and other administration expenses, which are estimated to be approximately $290,000.



7

ELECTRONICALLY FILED - 2023 Jan 10 3:26 PM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

2. The Personal Representative will pay $6,511.52 to Laura Jones, LLC in satisfaction of her outstanding creditor claim against the Estate.

3. The Personal Representative hereby waives the right to any Personal Representative's fee.

4. The Personal Representative will pay $12,305.28 to himself in reimbursement of his personal funds he advanced on behalf of the Estate and in satisfaction of his outstanding creditor claim against the Estate.

5. This Agreement is contingent upon the outstanding creditor claim of Palmetto State Bank being resolved, released and satisfied for a payment of no more than $25,000.00 and, if accepted, will be paid by the Personal Representative.

6. The Personal Representative will distribute $530,000 to Richard Alexander Murdaugh, Jr. as sole devisee of the Estate.

7. The Personal Representative will pay $100,000 to Joseph M. McCulloch, Esquire, as attorney for Connor Cook, on behalf of and in settlement of the suit against Richard Alexander Murdaugh, Jr.

8. The Personal Representative will pay $275,000.00 to the Co-Receivers in settlement of the Fraudulent Conveyance Claim to be held in the common fund under the custody and control of the Co-Receivers.

9. The Personal Representative will distribute the remaining balance of the Estate bank account to Mark B. Tinsley, Esquire on behalf of Renee Beach as Personal Representative for the Estate of Mallory Beach, Morgan Doughty and Miley Altman. The intent of this Agreement is to liquidate the remaining Estate assets and distribute the proceeds to Mark B. Tinsley, Esquire on behalf of his clients. The Estate will retain all intangible assets, including but not limited to, name,

8

ELECTRONICALLY FILED - 2023 Jan 10 3:26 PM - HAMPTON - COMMON PLEAS - CASE#2019CP250011

image and likeness, publication rights and choses in action. Such assets shall remain property of the Estate.

J. In consideration of the above payments, John M. Murdaugh as Personal Representative of the Estate of Margaret Kennedy Branstetter Murdaugh and the Estate of Margaret Kennedy Branstetter Murdaugh will be dismissed with prejudice from the above litigation filed by Renee Beach, Morgan Doughty, and Miley Altman in the circuit court, the Petitions for Allowance of Claim filed in the probate court by Renee Beach, Morgan Doughty and Miley Altman will also be dismissed with prejudice.

K. Renee Beach, Morgan Doughty and Miley Altman will each execute full and complete releases in favor of John M. Murdaugh as Personal Representative of the Estate of Margaret Kennedy Branstetter Murdaugh.

L. Richard Alexander Murdaugh, Jr. will be dismissed with prejudice from the suits filed by Renee Beach, Morgan Doughty, Miley Altman and Connor Cook, and the receivership appointment as to Richard Alexander Murdaugh, Jr. will be terminated, subject to Judge Hall's approval.

M. Renee Beach, Morgan Doughty, Miley Altman, and Connor Cook will each execute full and complete releases in favor of Richard Alexander Murdaugh, Jr.

N. The Fraudulent Conveyance Claim will be dismissed with prejudice. The Co-Receivers will sign full and complete releases in favor of the defendants in the action.

O. For and in consideration of the above, the Parties also agree that this Agreement and the release of all claims are not to be construed as an admission or acknowledgement of any liability or wrongdoing on the part of any of the Parties in connection with any allegations by any other parties; and that all Parties deny liability of any kind or nature to any other party. This Agreement is intended to inure solely to the benefit of the Parties.

9

ELECTRONICALLY FILED - 2023 Jan 10 3:26 PM - HAMPTON - COMMON PLEAS - CASE#2019CP250011

The Agreement does not limit or affect any claims that any Party may have against any third party. Except as explicitly contained herein, nothing in this Agreement is intended to alter the settlement agreement reached between the Co-Receivers and Palmetto State Bank filed with the court on September 15, 2022, and heretofore approved by Judge Hall.

P. The Parties further declare and represent that no promise, inducement or agreement, except as herein expressed, has been made to them, and this instrument contains the entire agreement between the Parties hereto, and the terms of this Agreement are contractual and not a mere recital.

Q. The Parties further agree that this Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which, together, shall constitute one and the same instrument. This Agreement may be executed and transmitted by facsimile or e-mail, which shall have binding effect. Copies of original execution pages of this Agreement shall have the same force and effect as the originals themselves.

R. The Parties further agree that, except in the case of fraud or material misrepresentation, the consideration exchanged in this compromise and settlement is and shall be a complete bar to any subsequent action or proceeding to set side or vacate this Agreement because of a mistake in fact or otherwise.

S. The Parties further acknowledge that they have been fully advised by their respective attorneys of their legal rights regarding this matter or acknowledge that they have had the opportunity to obtain such advice and have declined to do so, and that they have entered into this Agreement freely and voluntarily.

T. The Personal Representative will act in good faith using his best efforts to take all actions required of him by this Agreement as soon as is practicable.

10

ELECTRONICALLY FILED - 2023 Jan 10 3:26 PM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

IN WITNESS WHEREOF, the Parties affirm that they have carefully read this Agreement and understand, accept and agree to all provisions contained herein, intending to be legally bound thereby, have signed this instrument of their own free will, being fully aware of its final and binding effect, set their hands and seals in the presence of the below-named witnesses on the date set forth by their signature.

*(SIGNATURES ON FOLLOWING PAGES)*



11

ELECTRONICALLY FILED - 2023 Jan 10 3:26 PM - HAMPTON - COMMON PLEAS - CASE#2019CP250011

In the presence of:

_____

_____

In the presence of:

Renee Beach as Personal Representative of
the Estate of Mallory Beach
Date: 1/10/2023

_____

_____

In the presence of:

Morgan Doughty
Date: _____

_____

_____

In the presence of:

Miley Altman
Date: _____

_____

_____

In the presence of:

Connor Cook
Date: _____

_____

_____

In the presence of:

_____

John Marvin Murdaugh, as Personal
Representative of the Estate of Margaret
Kennedy Branstetter Murdaugh
Date: 1/5/2023

In the presence of:

12

ELECTRONICALLY FILED - 2023 Jan 10 3:26 PM - HAMPTON - COMMON PLEAS - CASE#2019CP250011

In the presence of:

_____

_____

Renee Beach as Personal Representative of
the Estate of Mallory Beach
Date: _____

In the presence of:

_____

_____

Morgan Doughty
Date: _____

In the presence of:

_____

_____

Miley Altman
Date: _____

In the presence of:

Connor Cook
Date: 1/9/23

In the presence of:

John Marvin Murdaugh, as Personal
Representative of the Estate of Margaret
Kennedy Branstetter Murdaugh
Date: 1/5/2023

In the presence of:

12

ELECTRONICALLY FILED - 2023 Jan 10 3:26 PM - HAMPTON - COMMON PLEAS - CASE#2019CP2500111

In the presence of:

_____

_____
Renee Beach as Personal Representative of
the Estate of Mallory Beach
Date: _____

In the presence of:

_____
Morgan Doughty
Date: _____

In the presence of:

_____

_____
Miley Altman
Date: _____

In the presence of:

_____

_____
Connor Cook
Date: _____

In the presence of:

_____

_____
John Marvin Murdaugh, as Personal
Representative of the Estate of Margaret
Kennedy Branstetter Murdaugh
Date: 1/5/20 23

In the presence of:

12

ELECTRONICALLY FILED - 2023 Jan 10 3:26 PM - HAMPTON - COMMON PLEAS - CASE#2019CP250011

_____

In the presence of:

_____

Richard Alexander Murdaugh, Jr.
Date: 1/5/2023

_____

_____

Peter M. McCoy, Jr., Co-Receiver
Date: _____

In the presence of:

_____

_____

John T. Lay, Co-Receiver
Date: 1-5-23

IN ACCORDANCE WITH RULE 43(k), COUNSEL SET THEIR SIGNATURES BELOW:

_____

William G. Newsome III, Esquire
*Attorney for John M. Murdaugh, as*
*Personal Representative of the Estate*
*of Margaret Kennedy Branstetter Murdaugh*

_____

Mark B. Tinsley, Esquire
*Attorney for Renee Beach, as Personal*
*Representative of the Estate of Mallory Beach,*
*Morgan Doughty, and Miley Altman*

_____

Everette W. Bennett, Jr., Esquire
*Attorney for John M. Murdaugh, as*
*Personal Representative of the Estate*
*of Margaret Kennedy Branstetter Murdaugh*

_____

Joseph M. McCulloch, Esquire
*Attorney for Connor Cook*

_____

William A. Coates, Esquire

_____

E. Elliot Condon, Esquire

13

Attorney for John M. Murdaugh, as
Personal Representative of the Estate
of Margaret Kennedy Branstetter Murdaugh

Attorney for Richard Alexander Murdaugh, Jr.

_____
Amy L.B. Hill, Esquire
Attorney for Co-Receivers, John T. Lay
and Peter McCoy

_____
Adam N. Yount, Esquire
Attorney for Richard Alexander Murdaugh, Jr.

ELECTRONICALLY FILED - 2023 Jan 10 3:26 PM - HAMPTON - COMMON PLEAS - CASE#2019CP250011