UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| United States of America,<br><br>v.<br><br>Richard Alexander Murdaugh,<br><br>Defendant. | Criminal No.: 9:23-cr-00396-RMG<br><br>**REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR IMMEDIATE SEIZURE OF DEFENDANT'S ASSETS** |

Defendant Richard Alexander Murdaugh hereby replies to the Government's opposition to his motion for the immediate seizure of his own former assets to preserve them for the benefit of his victims. All Mr. Murdaugh's former assets (the "Murdaugh Assets") are currently held by Peter M. McCoy and John T. Lay in their capacities as Co-Receivers, per order of appointment issued on motion of the plaintiff in *Beach v. Parker, et al.*, Case No. 2019-CP-25-00111 (S.C. Ct. Com. Pl. (Hampton Cnty.), Nov. 4, 2021).[1] The Murdaugh Assets are, in their entirety, subject to the Court's preliminary seizure order entered September 22, 2023, following Mr. Murdaugh's conviction for serious financial crimes. Mr. Murdaugh asks the Court to order seizure of the Murdaugh Assets to prevent further waste of the assets. The Government responded in opposition, stating that it does not intend to seize his assets, that it would prefer private lawyers acting under state-court appointment orders to distribute funds forfeited to the United States because they are able to do so in a manner contrary to U.S. Department of Justice regulations, and that, regardless, the Government and this Court lack jurisdictional authority to seize the convicted Defendant's

---

[1] The plaintiff in *Satterfield v. Murdaugh, et al.*, Case No. 2019-CP-25-00298 (S.C. Ct. Com. Pl. (Hampton Cnty.)) also moved for appointment of the Co-Receivers. The *Satterfield* claims against Mr. Murdaugh however have been reduced to judgment, which has been satisfied by offsets from other settling defendants.

assets. The Government's arguments are without merit. To the undersigned knowledge, no criminal defendant convicted of financial crimes against the United States has ever before had to beg a Court to force the United States to seize his own assets to preserve them the benefit of his victims and the public treasury.

**I.     Background**

On October 22, 2021, the plaintiff in *Beach* moved for the appointment of a receivership for Mr. Murdaugh's assets. Motion for TRO and Appointment of Co-Receivers, *Beach*, Case No. 2019-CP-25-00111. On November 2 and 4, 2021, the state court appointed Mr. Lay and Mr. McCoy as Co-Receivers. The lawsuit against Mr. Murdaugh in the *Beach* case has nothing to do with any criminal conduct by Mr. Murdaugh. It alleges Mr. Murdaugh negligently entrusted his boat to his late son Paul, who allegedly caused the death of Mallory Beach by driving the boat while intoxicated. 3d Amended Complaint ¶ 19(u), *Beach*, Case No. 2019-CP-25-00111.

The purpose of the receivership however is closely related to Mr. Murdaugh's thefts and other financial crimes. When his many financial crimes were revealed, it was apparent that his assets would not be sufficient to satisfy all claims against him, and there was fear that he would attempt to hide assets before his victims could obtain and execute judgments against him. ECF No. 46-8 ¶ 9; *see also* Motion for TRO and Appointment of Co-Receivers 4–9, *Beach*, Case No. 2019-CP-25-00111. Plaintiffs suing him in civil tort proceedings therefore moved for appointment of a receivership. Mr. Murdaugh does not believe there was a proper legal basis for the appointment of a receivership, but he has waived any challenge to the order initially appointing the receivership as part of a settlement agreement, ECF No. 46-6, and so he does not here dispute the decision to appoint a receivership.

The Co-Receivers' function is to "identify, recover, protect, collect, preserve, receive, manage, liquidate, sell, administer and marshal" Mr. Murdaugh's assets. ECF 46-2. Their duties

are somewhat like the duties of the personal representative of a decedent's estate, which include locating and taking control of the decedent's assets. In the approximately two years since their appointment, the Co-Receivers have marshalled $2,159,981.29 in liquidated assets, including $424,941.34 voluntarily paid into the receivership by Mr. Murdaugh from a retirement account outside the Co-Receivers' authority. ECF No. 46-4 at 2.

The Co-Receivers have incurred out-of-pocket expenses of $17,755.61 and have paid themselves $641,442.41 in legal fees. ECF No. 46-4. It appears the Co-Receivers will charge additional fees, because the most recent order approving payment of a tranche of fees states it is an "interim" payment "in partial satisfaction" of the Co-Receivers' fees, Order Approving Second Interim Application for Co-Receivers' and Their Counsel's Fees, *Beach*, Case No. 2019-CP-25-00111 (Sept. 1, 2023), and the Co-Receivers claim they and their counsel have worked more than 3,000 billable hours on the receivership, ECF 46-8 ¶ 16. The Co-Receivers' affidavit filed with the Government's response states, "we do not anticipate requesting or receiving any additional payment of fees" but also that "we reserve the right to request fees for future work if . . . circumstances reasonably warrant this." *Id.* ¶ 20.

The remaining cash balance in the receivership is $1,500,783.54. ECF No. 46-4 at 2. Additionally, the receivership controls about $269,000.00 in assets that are for some reason still unliquidated. *Id.*

On August 3, 2023, the Co-Receivers moved for appointment of a Special Referee to distribute the Murdaugh Assets to claimants. There is no apparent legal authority for the appointment of a Special Referee or even for the Co-Receivers to have standing to make such a motion. The only authority cited in the Co-Receivers' motion or in the order of appointment was Rule 53 of the South Carolina Rules of Civil Procedure. That rule allows referral of jury-triable

3

claims only by consent and in any case concerns referral of claims brought in a particular case (the case in which the special referee is appointed), not all claims of any nature against a particular person regardless of whether a lawsuit was even filed. *See* Rule 53, SCRCP (providing that "the circuit court may, upon application of any party or upon its own motion, direct a reference of some or all of the causes of action in a case" to a Master-in-Equity[2] or special referee and providing that any party may request a jury trial "on any or all issues triable of right by a jury and, upon the filing of a jury demand, the matter shall be returned to the circuit court").

L. Walter Tollison, III, Esquire, was appointed as the Special Referee on September 19, 2023. ECF No. 46-7. The appointment order states he is to be paid by Murdaugh Assets at his standard hourly rate. *Id.* The order creates a claims process under which claimants provide a "proof of claim" by October 29, 2023. *Id.* A "proof of claim" does not require a judgment, just something akin to a verified pleading with supporting evidence attached as exhibits. *Id.* Claimants can file supporting memoranda by November 15, 2023, and they can file oppositions to other claimants' "proof of claim" by November 29, 2023, and replies to oppositions are due December 14, 2023. *Id.* Discovery is not allowed. *Id.* The Special Referee may engage another lawyer as a mediator, to be paid from the Murdaugh Assets, and mediation is to occur by December 21, 2023. *Id.* A hearing will be held on or before January 12, 2024, and the Special Referee will issue a written order allocating Murdaugh Assets to claimants by February 5, 2024. *Id.* There is no guidance as to how the Special Referee should determine who gets what beyond a general statement that he should "equitably" allocate the funds. *Id.*

Mr. Tollison has provided an affidavit filed by the Government stating he "think[s] it is reasonable to forecast fees in the range of $50,000–$75,000" for his work as Special Referee. ECF

---

[2] No Master-in-Equity is available in Hampton County who is not disqualified from this case.

4

No. 46-9 ¶ 9. He does not guarantee his fee will not exceed $75,000, and because he declines to state his hourly rate or the number of hours he expects to bill, there is no way to gauge the credibility of his estimate. But given the process described above, his estimate appears unduly optimistic.

On September 21, 2023, Mr. Murdaugh pleaded guilty to and was convicted of numerous financial crimes against the United States. At the change of plea hearing, the Court granted his motion for a preliminary seizure order to be entered, and the Court—on Mr. Murdaugh's motion—directed the Government to submit a proposed order, which it did and which the Court entered. ECF No. 42. The preliminary seizure order determined that a minimum of $7,641,707.09—an amount far exceeding the Murdaugh Assets—is subject to forfeiture and entered a preliminary order for its seizure. *Id.* Thus, the Murdaugh Assets belonged to Mr. Murdaugh until the Court entered the preliminary order of seizure, at which point title to those funds transferred to the United States except to the extent third parties are later able to show a superior interest in ancillary proceedings. *See* Order, ECF No. 42; 21 U.S.C. §§ 853(n), (p); Fed. R. Crim. P. 32.2(c); *United States v. Marshall*, 872 F.3d 213, 220 (4th Cir. 2017) (providing title to substitute property vests in the Government no later than the forfeiture order entered upon conviction); *Beach*, Hearing Tr. 12:5–6, May 3, 2023 (the receivership court noting the money in the receivership "legally and technically right now is still his," referring to Mr. Murdaugh) (ECF No. 43-1); *cf. Hannon v. Mechanics Bldg. & Loan Ass'n of Spartanburg*, 180 S.E. 873, 876 (S.C. 1935) (noting that for property held by a receiver "title logically remains in the insolvent party for whose assets the appointment of a receiver was made"). The United States may distribute those funds to Mr. Murdaugh's victims in remission or restitution proceedings after entry of the final seizure order. *See generally* 28 C.F.R. pt. 9.

5

On September 25, 2023, Mr. Murdaugh moved to compel the Government to execute the forfeiture immediately. The Government responded in opposition, stating that while it intends at sentencing to seek a forfeiture of over $10,000,000, it does not intend to seize any of Mr. Murdaugh's assets *ever*, and that neither the Government nor this Court even have authority to seize the Murdaugh Assets.

## II.     Legal Standard

### A.     Authority for Seizure

Title to funds that are proceeds of crimes against the United States transfer to the United States when the crimes are committed. 21 U.S.C. § 853(c) ("All right, title, and interest in property [subject to criminal forfeiture] vests in the United States upon the commission of the act giving rise to forfeiture under this section.").[3] If any proceeds of crimes against the United States are not recoverable because they have been transferred to third parties, hidden, moved beyond the jurisdiction of the court, diminished in value, or commingled with other property, "the court shall order the forfeiture of any other property of the defendant, up to the value of any property" subject to forfeiture. 21 U.S.C. § 853(p). Title to such "substitute assets" transfers to the United States upon entry of the forfeiture order following conviction. *Marshall*, 872 F.3d at 220 ("Conversely, title to substitute property vests in the Government upon order by the district court after conviction, at the latest.").

### B.     Procedure Between Preliminary and Final Seizure

"As soon as practical . . . after a plea of guilty . . . is accepted, on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what

---

[3] 18 U.S.C. § 982(b)(1) provides that 21 U.S.C. § 853 governs disposition of property forfeited for money laundering offenses.

property is subject to forfeiture under the applicable statute." Fed. R. Crim. P. 32.2(b)(1)(A). "If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay." *Id.* "If the court finds that property is subject to forfeiture, it must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment, directing the forfeiture of specific property, and directing the forfeiture of any substitute property if the government has met the statutory criteria." Fed. R. Crim. P. 32.2(b)(2)(A). "The court must enter the order without regard to any third party's interest in the property." *Id.* "Determining whether a third party has such an interest must be deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c)." *Id.*

Generally, unsecured creditors do not have a cognizable interest in forfeited property and lack standing to make a petition under Rule 32.2. *See United States v. Watkins*, 320 F.3d 1279, 1284 (11th Cir. 2003) (concluding unsecured creditors' "interest lies against the debtor personally as opposed to any specific property"); *United States v. Ribadeneira*, 105 F.3d 833, 836 (2d Cir. 1997) ("[G]eneral creditors without an identifiable legal interest in the particular assets subject to forfeiture lacked standing to contest the Final Order of Forfeiture . . . ."). "The Fourth Circuit, however, allows a narrow exception when the defendant's entire estate is criminally forfeited." *United States v. French*, 822 F. Supp. 2d 615, 618 (E.D. Va. 2011) (citing *United States v. Reckmeyer*, 836 F.2d 200, 205–06 (4th Cir. 1987)). In *Reckmeyer*, the Fourth Circuit held general creditors have a legal interest in the entire estate and such creditors "who gave valuable consideration to the estate without knowledge of the potential forfeitability of the defendant's assets may recover the value so conveyed under § 853(n)(6)(B)." 836 F.2d at 207.

The Court adjudicates ancillary proceedings. When "a third party files a petition asserting an interest in the property to be forfeited, the court must conduct an ancillary proceeding, but no

7

ancillary proceeding is required to the extent that the forfeiture consists of a money judgment." Fed. R. Crim. P. 32.2(c)(1). Petitions must be filed within 30 days of receiving notice of the forfeiture order. 21 U.S.C. § 853(n). "In the ancillary proceeding, the court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason." Fed. R. Crim. P. 32.2(c)(1)(A). After disposing of any motion to dismiss "and before conducting a hearing on the petition, the court may permit the parties to conduct discovery in accordance with the Federal Rules of Civil Procedure if the court determines that discovery is necessary or desirable to resolve factual issues" and after "discovery ends, a party may move for summary judgment under Federal Rule of Civil Procedure 56." Fed. R. Crim. P. 32.2(c)(1)(B). "When the ancillary proceeding ends, the court must enter a final order of forfeiture by amending the preliminary order as necessary to account for any third-party rights." *Id.*

**C.     Procedure After Final Seizure**

After forfeiture is finalized, the Attorney General has statutory authority to "grant petitions for remission or mitigation of forfeiture, restore forfeited property to victims . . ., or take any other action to protect the rights of innocent persons which is in the interest of justice." 21 U.S.C. § 853(i). The authority of the Attorney General to grant petitions for remission or mitigation in criminal judicial forfeitures is delegated. 28 C.F.R. § 9.1. The procedures are codified at 28 C.F.R. Part 9. In general, the regulations allow return of forfeited property to a victim of the underlying offense if eligibility criteria are met. A victim is someone who suffered a specific pecuniary loss as a direct result of the crime underlying the forfeiture. 28 C.F.R. § 9.2. To qualify for remission, the victim cannot have contributed to or been willfully blind to the offense. 28 C.F.R. § 9.8(b). Victims who have been fully compensated for their loss or who have recourse to reasonably available sources of compensation are not eligible for remission. *Id.* If a third party has compensated a victim for the loss, remission may be granted to the third party that provided the

8

compensation. 28 C.F.R. § 9.2. General creditors may not be granted remission. 28 C.F.R. § 9.6(a). If the forfeited funds are not sufficient to fully compensate all victims, the funds are distributed on a *pro rata* basis based on the loss suffered by each victim. 28 C.F.R. § 9.2(f). Restoration is a similar process by which forfeited funds can be used to pay restitution to victims named in a restitution order as part of the criminal defendant's sentence.

### III. <u>Argument</u>

**A. The Court should order Mr. Murdaugh's assets to be deposited into the registry of the Court to preserve the status quo safekeeping until such time as the Government is "inclined" to follow the law.**

**1. *The Murdaugh Assets, to which the United States holds title pending distribution to Mr. Murdaugh's victims, are in imminent danger of waste.***

Receivership fees have reduced the Murdaugh Assets by approximately 30%. There will be further fees from the Special Referee and probably from the Co-Receivers, possibly exceeding another $100,000 or more likely $200,000. The federal forfeiture processes described above make those fees unnecessary. The assets belong to the United States and will be available for remission to victims through a petition process the Government provides for free. There is no need to reduce the amount available for remission to victims by hundreds of thousands of dollars to pay yet more fees to private attorneys. Any further legal fees would be pure waste.

In opposition, the Government provides a 17-page affidavit from the Co-Receivers justifying their fees charged to date. ECF No. 46-8. The affidavit is not particularly relevant to the present motion, which seeks seizure pursuant to a forfeiture order to prevent further waste in the future, not to argue justifications for fees already paid. The propriety of the Co-Receivers' fees is not an issue before the Court. Mr. Murdaugh simply asks the Court to decide that regardless of whether the Co-Receivers fees to date are justifiable, $641,442.41 in fees is enough and that the status quo must be preserved to preserve what remains of the Murdaugh Assets for the victims.

9

2. ***The Government's argument that it has discretion to decline to seize assets ordered forfeited to the United States so that private attorneys can distribute the assets free from the restrictions of the U.S. Department of Justice's own regulations is extraordinary.***

The Government argues that it can simply decline to execute the ordered forfeiture and thereby enable private attorneys to distribute assets belonging to the United States in a way the Government cannot. ECF No. 46 at 5–6. That is an extraordinary argument.

The criminal forfeiture statute provides that a person convicted of a money laundering offense "punishable by imprisonment for more than one year **shall** forfeit to the United States, irrespective of any provision of State law—(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation" and where such property is no longer available, "the ***court shall order*** the forfeiture of any other property of the defendant, up to the value of" the property constituting or derived from proceeds of the crime. 21 U.S.C. §§ 853(a) & (p) (emphasis added).

It is true 21 U.S.C. § 853(g) provides that a forfeiture order "authorize[s]" the Attorney General to seize forfeited assets but does not command him to do so. But the statute does not contemplate the Attorney General giving a "Bartleby" response to a forfeiture order the Government requested. *See* Herman Melville, *Bartleby, the Scrivener: A Story of Wall Street*, 2 Putnam's Magazine 546–557, 609–615 (1853). Having asked for forfeiture in the indictment, the Attorney General is expected to execute the forfeiture when it is granted. This is what the U.S. Department of Justice's Asset Forfeiture Policy Manual anticipates:

> The government is not required to have an asset subject to criminal forfeiture in the government's possession during the pendency of a criminal forfeiture proceeding. That is because criminal forfeiture proceedings are *in personam*—so the court does not need to have *in rem* jurisdiction over the asset (which type of jurisdiction typically requires the government to have possession of the asset) to make the asset subject to criminal forfeiture. The criminal forfeiture statutes accordingly contemplate that assets subject to criminal forfeiture might remain in the defendant's custody ***until the court enters a preliminary order of forfeiture***. *See*

> 21 U.S.C. § 853(g) ("Upon entry of an order of forfeiture under this section, the court shall authorize the Attorney General to seize all property ordered forfeited").

Money Laundering and Asset Recovery Section, U.S. Dep't Justice, Asset Forfeiture Manual 2-4 (2023) (emphasis added). There is no contemplation of allowing forfeited assets to remain outside the Government's custody *after* the preliminary forfeiture order is entered so that ownership of the assets may be transferred to persons not qualified under federal regulations to petition the Attorney General for the assets. That would, of course, defeat the purpose of the forfeiture order transferring title *to* the United States.

Yet that is exactly what the Government proposes. The Government does not merely argue that it would "prefer not to" seize the Murdaugh Assets; it argues it would prefer the receivership keep them and distribute them both to persons who are eligible to seek remission of forfeited funds from the Government and to persons who are ineligible to do so. ECF No. 46 at 5–6. The Government argues that because some persons—specifically, "victims [who] have been made 'whole' for purposes of federal restitution and would therefore not be entitled to any additional funds" and "individuals that would not be entitled to restitution as victims of Murdaugh's federal crimes, including victims of the 2019 boating accident and Murdaugh's individual creditors"—are ineligible under the U.S. Department of Justice's own regulations to receive assets formerly belonging to Mr. Murdaugh that now belong to the United States, federal proceedings do not perform the "same function" as the receivership.

The "function" of federal proceedings is to give Mr. Murdaugh's money to the victims of Mr. Murdaugh's crimes in the manner prescribed by federal law and regulations, but admittedly that is not the function of the receivership. Under federal remission procedures, all Murdaugh Assets will go to the victims of Mr. Murdaugh's financial crimes until they are all fully compensated. Victims already fully compensated receive no further payment but the persons who

11

compensated them may themselves seek compensation if they otherwise qualify. If there is not enough money, it will be allocated pro rata. If there is a surplus of money, it will be used for public purposes like funding law enforcement agencies. Unsecured creditors get nothing.[4] In contrast, under the receivership procedures, Mr. Tollison divides the Murdaugh Assets among everyone who asks for a piece of them, in whatever manner he feels is "equitable."

To be sure, federal procedures do not allow victims to receive compensation from public funds that exceeds their losses. It is also true these procedures do not allow payments to persons who are not victims of Mr. Murdaugh's financial crimes. These decisions were made by the Attorney General. Disposition of assets belonging to the United States is ultimately a decision for Congress, which decides by enacting laws. U.S. Const. art. IV sec. 3 cl. 2. Congress has by law authorized the Attorney General to dispose of assets obtained by forfeiture under certain conditions. 21 U.S.C. § 853(i). The Attorney General exercises that discretion Congress has granted him by establishing regulations and delegating execution to inferior officers. 28 C.F.R. pt. 9. The United States Attorney is supposed to follow those regulations, not circumvent them.

Finally, in a footnote the Government contends the "United States regularly elects not to seize certain assets to satisfy a forfeiture money judgment, for countless reasons. *See, e.g.*, JM 9-111.120, 9-111.123, 9-111.124, 9-111.400." ECF No. 46 at 7 n.6. But the sources the Government cites do not support that statement. JM 9-111.120 provides that property must meet some minimum net values to be worth the effort of seizure processes. For cash, the minimum value is

---

[4] Unsecured creditors cannot seek remission of forfeited funds, but since Mr. Murdaugh's entire estate has been seized, Fourth Circuit precedent allows them to recover in ancillary proceedings. *Reckmeyer*, 836 F.2d at 207. Nevertheless, Murdaugh's attorneys have stated publicly that they will seek no funds from the Murdaugh Assets to pay their attorney's fees, and they make the same representation to the Court. Mr. Murdaugh's position is that **no lawyers** should receive any more legal fees from the Murdaugh Assets.

$5,000.  JM 9-111.123 provides that liability seizures should be avoided, i.e., that property should not be seized if the cost of satisfying liens and managing and disposing the property will exceed proceeds of the sale of the property.  JM 9-111.124 requires U.S. Attorney's Offices to consult with the Money Laundering and Asset Recovery Section of the Criminal Division before seizing an ongoing business, "due to the potential for substantial losses from such a seizure."  JM 9-111.400 imposes restrictions on seizures of real property contaminated with hazardous substances.  None of those policies even slightly supports the Government's contentions here that it is not unprecedented or even unusual for the Government to refuse to seize $1.5 million in forfeited funds sitting in a bank account,[5] and that the Court should refrain from preserving the status quo until such time as the Government is inclined to take possession of its own money.

The Court should order the Murdaugh Assets deposited with the registry of the Court, where they can safely wait until such time as the Government decides to follow its own regulations concerning forfeited assets.  Doing so will not impair any interest of the United States or prejudice any potential claimant in the ancillary or remission proceedings but will assuredly safeguard the assets from waste.  Preserving the status quo is the most prudent and cautious course of action available to the Court.

**B.      The Government argument that it and the Court both lack jurisdiction to take possession of assets belonging to the United States is without merit.**

The Government's discussion of legal principles and case law concerning *in rem* proceedings is irrelevant.  As the Government concedes, the forfeiture action against Mr.

---

[5] Mr. Murdaugh assumes the liquidated funds are deposited with a bank, but he has no way to know for certain.  Nor does he know whether a return is being earned on those funds.  The accounting the Government provided lists no interest or other return on funds held by the receivership.  ECF 46-4.  Presumably such returns are included within the "proceeds" line items for each transaction.

13

Murdaugh is "an *in personam* criminal forfeiture proceeding against" him. ECF No. 46 at 8 n.7. There are no *in rem* proceedings in state court against the Murdaugh Assets. The *Beach* action in which the receivership is appointed is an *in personam* action against Mr. Murdaugh for negligent entrustment of a boat. The receivership holds the Murdaugh Assets in trust for persons suing Mr. Murdaugh personally, *in personam*. No one is suing a specific sum of money or parcel of land.

The Government's jurisdictional argument then is a single paragraph discussing the common law principle of *in custodia legis*, which prevents attachment or execution against property held "in the custody of law" including assets held by court-appointed receivers. The Government points out that the state-court-appointed receivership places the Murdaugh Assets are *in custodia legis*. This is true. The Government then concludes, with no explanatory analysis, that places the assets beyond the jurisdiction of the courts and government of the United States. This conclusion is wrong for at least four reasons.

First, the doctrine of *in custodia legis* applies to "funds owing to individuals," not to funds forfeited to the United States:

> In the absence of express statutory authority, the general rule is that property or funds in custodia legis, that is, in the custody of the law, are not subject to attachment or garnishment. Under the doctrine of "custodia legis," funds in the possession of the commonwealth or one of its political subdivisions, owing to individuals, are not subject to attachment under the public policy that the government should be free from the annoyance and uncertainty arising out of disputes between the individuals to whom the money is owed and those claiming a right to the same funds by garnishment.

6 Am. Jur. 2d Attachment and Garnishment § 163 (footnotes omitted); *see also Decatur Contracting v. Belin, Belin & Naddeo*, 898 F.2d 339, 343 n.2 (3d Cir. 1990). The doctrine prevents private parties from seizing funds in the possession of a court by means of legal processes like attachment, garnishment, or execution. It has no application to federal criminal forfeiture.

Second, there is an "express statutory authority" allowing seizure of forfeited funds. The forfeiture statute provides the convicted criminal shall forfeit his assets to the United States "irrespective of any provision of State law." 21 U.S.C. § 853(a). The Government's authority to seize the forfeited assets is part of the forfeiture. 21 U.S.C. § 853(g). The receivership was appointed under a state law: South Carolina Code § 15-65-10. ECF No. 46-3. State laws including those concerning receivership cannot prevent or trump federal criminal forfeiture. 21 U.S.C. § 853(a); *United States v. Holy Land Found. for Relief & Dev.*, 722 F.3d 677, 690 (5th Cir. 2013) ("Even if [the defendant] had brought a challenge to the forfeitability of its assets under the *in custodia legis* doctrine, that argument would be precluded by the terms of the criminal forfeiture statute.").

Third, if the Murdaugh Assets were temporarily inaccessible while held in receivership, like a fugitive crying "sanctuary" in a church, they would be subject to seizure as soon as Mr. Tollison adjudicated claims. *See United States v. Bd. of Cnty. Comm'rs for Lucas Cnty.*, No. 76-35, 1978 WL 4506, at *4 (N.D. Ohio May 19, 1978) (noting "the general rule that property held *in custodia legis* is not subject to attachment prior to fulfillment of the purpose for which it is held" but after an order is "made determining who is entitled to the fund and ordering payment thereof, the fund ceases to be *in custodia legis*" (emphasis and internal quotation marks omitted)). The Government cites no authority for—and avoids any discussion of—the proposition that Mr. Tollison somehow has authority to award title to the United States' assets to private parties. He does not. It is illogical to argue that the United States cannot seize assets belonging to the United States held by a state court lacking authority to give the assets to anyone other than the United States, without first waiting for the state court to pretend to award title to someone else.

15

Fourth, Mr. Murdaugh is the only person with standing to challenge the authority of the Court to seize the Murdaugh Assets by any means other than a petition made in ancillary proceedings under 28 U.S.C. § 853(n) and Rule 32.2, and he is the one asking for the seizure. *Holy Land Found. for Relief & Dev.*, 722 F.3d at 690 (holding the defendant "is the only party that has standing to challenge the forfeitability of its assets" and since the defendant "has not challenged the forfeitability of its assets in this appeal, the issue is not before us"). The Co-Receivers have no interest in the Murdaugh Assets. *Peurifoy v. Gamble*, 142 S.E. 788, 790 (S.C. 1928) (noting a "receivership is simply a remedial agency created for the purpose of preserving and disbursing the assets of the insolvent estate" and "has no personal interest in the property"). Because Mr. Murdaugh's entire estate has been seized, persons "who gave valuable consideration to" him "without knowledge of the potential forfeitability of" his assets, and possibly persons with unsatisfied judgments against him that predate the forfeiture, have standing to petition in ancillary proceedings. *Reckmeyer*, 836 F.2d at 207. Ancillary proceedings in federal court are the exclusive means by which a third party can challenge a criminal forfeiture. *United States v. Mar. Life Caribbean Ltd.*, 913 F.3d 1027, 1035 (11th Cir. 2019) ("Congress has created one—and only one—means for interested third-parties to participate in a criminal-forfeiture proceeding: asserting a 'legal right, title, or interest' sufficient for standing in an ancillary proceeding, 21 U.S.C. § 853(n).").

*   *   *

Mr. Murdaugh's motion presents the Court with two options. On the one hand, there is a bespoke process invented by prominent South Carolina lawyers only for Mr. Murdaugh's case, under which prominent South Carolina lawyers pay themselves fees from the Murdaugh Assets and themselves decide which claims against Mr. Murdaugh brought by prominent South Carolina

lawyers will be paid, and how much they will be paid. On the other hand, there is the process set forth in the United States Code, Code of Federal Regulations, and Federal Rules of Criminal Procedure, run by public servants at no cost to the victims, which applies to everyone, rich and poor alike.

Justice appears to weigh in favor of the forfeiture process prescribed by the federal statutes, rules, and regulations that apply to all persons, and against a one-off process invented for application only to a single person. The Government disagrees. But undersigned counsel and the attorneys representing the Government are merely partisan advocates acting for parties to a dispute. The presiding judge, who acts as the Court, is the only person involved in this dispute who has taken the judicial oath to "administer justice without respect to persons." 28 U.S.C. § 453. The forfeiture at issue is part of the sentence imposed by the Court, not the Government. And it is the Court, not the Government, whom the Constitution entrusts with authority to decide what law and justice require in the case before it.

## IV.     Conclusion

Whatever the merits of the Co-Receivers' fees to date, the Court should not permit any further fees to be paid from the Murdaugh Assets to the Co-Receivers, Mr. Tollison, or any other lawyer. Mr. Murdaugh's remaining assets should be distributed *only* to his victims, his legitimate creditors, and the public treasury, and *only* in the manner set forth by the laws and regulations governing federal criminal forfeiture. To effectuate this, Mr. Murdaugh respectfully requests the Court order the Co-Receivers to deposit all liquidated Murdaugh Assets into the registry of the Court in an interest-bearing account and order the U.S. Marshals Service to seize and sell any non-liquidated assets remaining in the Murdaugh Assets, depositing the net proceeds of such sales into the registry of the Court in an interest-bearing account.

Respectfully submitted,

s/Phillip D. Barber
Richard A. Harpootlian (Fed. ID No. 1730)
Phillip D. Barber (Fed. ID No. 12816)
RICHARD A. HARPOOTLIAN, P.A.
1410 Laurel Street (29201)
Post Office Box 1090
Columbia, SC 29201
(803) 252-4848
(803) 252-4810 (facsimile)
rah@harpootlianlaw.com
pdb@harpootlianlaw.com

James M. Griffin, Fed. ID No. 1053
Margaret N. Fox, Fed. ID No. 10576
GRIFFIN HUMPHRIES, LLC
4408 Forest Dr., Suite 300 (29206)
P.O. Box 999 (29202)
Columbia, South Carolina
(803) 744-0800
jgriffin@griffinhumphries.com
mfox@griffinhumphries.com

ATTORNEYS FOR DEFENDANT RICHARD ALEXANDER MURDAUGH

October 10, 2023
Columbia, South Carolina.