IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **CRIMINAL NO. 9:23-396-RMG** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| | ) | |
| **RICHARD ALEXANDER MURDAUGH** | ) | |
| | ) | |

### Government's Sur-Reply in Opposition to Defendant's Motion for Immediate Seizure of Defendant's Assets

The Government files this sur-reply in opposition to the Defendant Richard Alexander Murdaugh's ("Defendant") motion for immediate seizure of assets, Dkt. No. 43, for the limited purpose of responding to and addressing legal arguments and factual claims raised for the first time in the Defendant's reply, Dkt. No. 48.[1] After filing a three-page motion, the Defendant filed a 15-page reply, in which he attempts to advance new arguments and factual allegations not previously raised in his original motion. The Government files this sur-reply to address only those new arguments and statements in the Defendant's reply and otherwise relies on its original

---

[1]    This Court's Local Rules do not contemplate sur-replies. However, under limited circumstances, the Court has recognized that sur-replies may be warranted to allow a party to address an issue raised for the first time in responsive briefing. *See, e.g.*, *Koppers Performance Chemicals, Inc. v. Travelers Indem. Co.*, No. 2:20-CV-2017-RMG, 2021 WL 5906112, at \*2–3 (D.S.C. Nov. 5, 2021); *see also Genesis Health Care, Inc. v. Soura*, 165 F. Supp. 3d 443, 456 (D.S.C. 2015) (allowing the plaintiff to file a sur-reply to address an issue first raised after a motion was fully briefed); *DiPaulo v. Potter*, 733 F. Supp. 2d 666, 670 (M.D.N.C. 2010) ("Generally, courts allow a party to file a surreply only when fairness dictates based on new arguments raised in the previous reply."); *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003) ("Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply"), aff'd, 85 F. App'x 960 (4th Cir. 2004).

response in opposition to the Defendant's motion, ECF No. 46.[2] In short, for the reasons briefly outlined herein, the Defendant's arguments and assertions rely solely on distinguishable and inapplicable caselaw in an attempt to circumvent the State Court's Receivership under the thinly-veiled guise of attempting to make whole the victims of his financial crimes.

### A. The Defendant Conflates a Preliminary Order of Forfeiture with a Final Forfeiture Order.

First and foremost, the Defendant conflates a final order of forfeiture with a preliminary order of forfeiture. In his reply, the Defendant states "[t]he Murdaugh assets are, in their entirety, subject to the Court's preliminary *seizure* order entered September 22, 2023, following Mr. Murdaugh's conviction for serious financial crimes." Def.'s Reply, at 1 (emphasis added). The Defendant repeatedly refers to the Court's preliminary order of forfeiture as a "seizure" order throughout his reply. *See, e.g.*, Def.'s Reply at 1, 5. But the order on which the Defendant relies to support his request for immediate seizure of the Receivership assets is a preliminary order of forfeiture, not a final seizure order.

The Defendant claims that title to the Receivership funds transferred to the United States immediately upon the entry of the preliminary order of "seizure," as if the Court had ordered forfeiture of those assets. *Id.* at 5. In support of his argument, the Defendant cites *United States v. Marshall*, 872 F.3d 213 (4th Cir. 2017). In *Marshall*, the defendant was convicted of various financial and drug crimes following a trial. *Id.* at 215-16. Thereafter, the government filed a motion for order of forfeiture, seeking a money judgment. *Id.* at 216. Ultimately, the district court entered an order of forfeiture in the amount of $51,300,000 at the sentencing. *Id.* Two days later, the defendant filed a motion seeking the release of funds held in his credit union account for use in his

---

[2]    Counsel for the Government has consulted with counsel for the Defendant, and they have no objection to the Government's request to file a sur-reply.

appeal, requesting access because the funds were not specifically a part of the forfeiture order. *Id.* The government then filed a motion for a second order of forfeiture, specifically requesting the forfeiture of those funds, classifying the funds as substitute assets. *Id.* The district court granted the government's motion and ordered that the funds in the account were subject to forfeiture. *Id.* The defendant then filed a motion to stay the forfeiture order pending appeal, and the district court granted that motion. *Id.*

On appeal, the Fourth Circuit held in *Marshall* that "title to [the defendant's] substitute property—the credit union account funds—had vested in the Government by the issuance of the district court's forfeiture order following his conviction." *Id.* at 220-21. Therefore, the defendant could not use the assets to pay appellate counsel. *Id.*

The Defendant attempts to rely on *Marshall* to support his claim that the United States now has title to the assets currently subject to the State Court Receivership. However, in *Marshall*, the government specifically sought and obtained a forfeiture order of the assets in the credit union account as substitute assets. *Id.* at 216. Unlike the assets in *Marshall*, the Government is not currently seeking forfeiture of the Receivership funds as substitute assets.[3] Therefore, the assets in the State Court's Receivership are not the subject of a final forfeiture order. Further distinguishing this case from *Marshall* is the fact that the district court's forfeiture order pertaining to the credit union funds was a final forfeiture order, not a preliminary order of forfeiture. *Id.* In fact, the defendant in *Marshall* challenged the government's failure to follow the process outlined in Rule

---

[3] The Defendant incorrectly claims in his reply that the Government stated it would not *ever* seize the assets in the Receivership. Def.'s Reply at 6. Of course, if circumstances change—for example if the State later relinquishes jurisdiction over the assets currently held in the Receivership—the Government could and likely would move to seize those assets. In its response, the Government stated that it did not intend to seize the assets *at this time.* Gov't's Resp. at 1, 2, 5, 9.

32.2 by not obtaining a preliminary order of forfeiture promptly after the guilty verdict. *Id.* at 222-23.

Here, the Court has entered a preliminary order of forfeiture, ordering that "the United States is *entitled* to forfeit substitute assets equal to the value of the proceeds" the Defendant obtained from his crimes. Dkt. No. 42. But entitled does not mean obligated. The order further allows the government to move to amend the order to seek substitute assets to satisfy the forfeiture judgment. *Id.* The order provides that it becomes final "[u]pon the entry of the criminal judgment, and shall be made a part of the sentence included in the criminal judgment." *Id.* This Court's preliminary order of forfeiture was just that—a *preliminary* order, not a final order. The order did not order the seizure or forfeiture of the assets in the Receivership and is therefore distinguishable from the district court's order in *Marshall*.

### B. The Defendant Waived his Right to Challenge or Contest the Receivership and the Claims Process, Including the Appointment of a Special Referee.

The Defendant submits only one reason why the Court should order the immediate seizure of the Receivership assets—that the funds will be unnecessarily dissipated. Def.'s Reply at 9-16. But the only concrete risk of dissipation is the $50,000 to $75,000 that the Special Referee intends to collect in fees. *See* Gov't's Resp., Exs. 8 & 9.

For the first time in his reply, the Defendant claims that there "is no apparent legal authority for the appointment of a Special Referee or even for the Co-Receivers to have standing to make such a motion." Def.'s Reply at 3. But the Co-Receivers were granted broad authority by the Receivership Order to administer the Subject Assets and to do all things incidental thereto. *See* Gov't's Resp., Ex. 2. Although the Government is not a party to the State Court Receivership proceedings, it is hardly a stretch to conclude that this expansive authority would include engaging lawyers and other agents, such as Walt Tollison, to assist them in the administration of assets—

4

and a reading of the State Court's Order supports such a conclusion. *Id.* Beyond the Co-Receivers' authority to select Mr. Tollison on their own, the Receivership Court has independently approved the appointment and the process.

The Defendant knowingly waived his rights to object to and appeal the Receivership Order, including the broad grant of authority to the Co-Receivers, as he acknowledged in his reply. Gov't's Resp., Ex. 6; Def.'s Reply at 2. Yet that is exactly what the Defendant is trying to do here. The Defendant had an opportunity to attack the claims process and to object to its adequacy and efficacy at the state court hearing before Judge Hall on August 25, 2023, but the Defendant did not do so. Now, the Defendant is attempting to circumvent and undermine his knowing and voluntary waiver by effectively pleading this Court to hear his appeal and allow him to contest the Order entered by Judge Hall approving the process for equitable allocation of the Receivership assets.[4] It is axiomatic that one "cannot do indirectly that which he is prohibited from doing directly." United States v. Jackson, 608 F.3d 193, 197 n.1 (4th Cir. 2010).

Just as the Defendant does not get to decide which assets the Government seizes or when, the Defendant should not be allowed to conduct an end-run around the State Court Receivership proceedings.

Forfeiture determinations are entrusted to the Government, subject only to this Court's approval and order upon the requisite showing. *See* Dkt. No. 42; Fed. R. Cim. Pr. 32.2. This Court

---

[4]     For the first time in his reply, the Defendant claims that his attorneys do not intend to seek fees from the Receivership assets during the claims process. But the Defendant and his counsel have not moved to dismiss their appeal to the South Carolina Court of Appeals, which seeks to do just that—claw back funds from the liquidation of the Defendant's 401(k) accounts that he agreed to place, and did place, into the Receivership estate, for the express purpose of paying his lawyers. *See* S.C. Ct. App. Case No.: 2023-001013. The Defendant's counsel previously sought $160,000 in legal fees from the Receivership assets. To the Government's knowledge, the Defendant's counsel have not notified the Co-Receivers that they are no longer seeking those funds.

should not entertain the Defendant's misguided effort to force the federal government to interfere with the State Court Receivership or frustrate the fiduciary administration thereof.

For the foregoing reasons, and those previously set forth in the Government's response, the Court should deny the Defendant's motion for immediate seizure of assets.

Respectfully submitted,

ADAIR F. BOROUGHS
UNITED STATES ATTORNEY
By: s/ *Emily Evans Limehouse*
Emily Evans Limehouse (Federal ID #12300)
Assistant United States Attorney
151 Meeting Street, Suite 200
Charleston, South Carolina, 29402
(843) 266-1663
Emily.Limehouse@usdoj.gov

October 13, 2023